**Theodore GREEN**

v.

**UNITED STATES of America.**

Misc. Civ. Nos. 61-42-C, 63-4-C.

United States District Court
D. Massachusetts.

July 19, 1963.

Manuel Katz, and James Vorenberg, Boston, Mass., court-appointed counsel for Theodore Green.

W. Arthur Garrity, U. S. Atty., and William J. Koen, Asst. U. S. Atty., Boston, Mass., for the United States.

CAFFREY, District Judge.

Movant THEODORE GREEN was convicted in the autumn of 1952 on a three-count indictment charging him with entering a bank with intent to commit a felony, robbing a bank, and assaulting or putting in jeopardy the lives of persons in the bank by use of a dangerous weapon while committing the robbery, in violation of 18 U.S.C.A. §§ 2113(a) and 2113 (d). Green was sentenced to a term of 25 years in prison and subsequently he has filed a series of motions under either Rule 35, Federal Rules of Criminal Procedure, or 28 U.S.C.A. § 2255.

The instant motion, filed approximately one month after the opinion in Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417, was handed down, seeks that the sentence be vacated

"because of the trial judge's failure to afford petitioner an opportunity to speak before sentence was imposed as provided in Rule 32(a), Federal Rules Criminal Procedure, 18 U.S. C.A., the petitioner was unable to correct false and misleading statements made by the Asst. United States Attorney in enhancement of the punishment which prejudiced the petitioner to the extent he suffered manifest injustice.

"That the petitioner had sufficient reason in law to object to any sen-

tence in the excess of twenty (20) years and he would have brought said matter to the attention of the trial judge had he been given an opportunity to speak in his own behalf before sentence."

This motion was denied without a hearing in an opinion filed on June 14, 1962, 206 F.Supp. 619. Thereafter, a timely appeal from the denial of the motion was taken to the Court of Appeals for this Circuit. The Court of Appeals filed an opinion on January 23, 1963 which concluded "we hold that (this) motion should not have been dismissed without hearing." (313 F.2d 6, 10.)

Thereafter, a hearing was held on June 17, 1963, at which movant Green and other witnesses testified. Green was represented at the hearing by court-appointed counsel, Manuel Katz, Esq. and James Vorenberg, Esq. At the hearing the first factual issue to be resolved was the question whether or not in fact Green was afforded the right of allocution prior to the imposition of sentence in 1952. After hearing testimony this issue was resolved in favor of Green, and an oral ruling to that effect was made in open court.

The next issues open under this motion arise as a result of the opinion of the Supreme Court in the Hill case, where speaking for a majority Mr. Justice Stewart said (368 U.S. at p. 429, 82 S.Ct. at p. 471):

> "It is to be noted that we are not dealing here with a case where the defendant was affirmatively denied an opportunity to speak during the hearing at which his sentence was imposed. *Nor is it suggested that in imposing the sentence the District Judge was either misinformed or uninformed as to any relevant circumstances.* Indeed, there is no claim that the defendant would have had anything at all to say if he had been formally invited to speak." (Emphasis added.)

Green contends (1) that the District Judge who imposed sentence on him was misinformed by the Assistant United States Attorney and (2) that he would have made a series of statements correcting the misinformation given by the Assistant United States Attorney had he been granted an opportunity to do so before imposition of sentence.

Unless Green can show that both of these allegations are factually true, the decision of the Court in Hill v. United States, supra, makes it clear that the mere denial of the right of allocution before sentence is imposed "is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus," (368 U.S. p. 428, 82 S.Ct. p. 471), and that denial of allocution without more is not grounds for vacation of sentence on a Sec. 2255 motion. Prior to the hearing Green filed an affidavit and a supplemental affidavit in support of his motion setting out alleged facts which he says made the argument of the prosecutor prior to the imposition of sentence "false and prejudicial."

At the June 17 hearing Green testified that had he been extended an opportunity to do so he would have told the sentencing judge:

1. that "I had never been in any House of Correction;"
2. that the prosecutor was "misinforming the Court in that he said I had deserted my family and was traveling around the country living by my wits * * I supported my family;"
3. that "I have been out of Boston maybe once or twice at the very most, out of Massachusetts, in the last 25 years, not respecting the time I was in Alcatraz;"
4. that "I have always worked hard all my life, in fact I would have given him in chronological order the work I have done all my life."
5. that "(conviction under which he was then under sentence of 15–20 years in State prison) was on appeal and there was no final judgment on it;"
6. that the prosecutor in saying that in his opinion Green was

a killer "was misinforming the Court again and trying to inflame the Court, that I have never been accused of being a killer or was a killer;"

7. that "I would have requested the Court to appoint counsel for me as Mr. Callahan (Green's then counsel) had previously advised me that there were many errors in the case and that I was a pauper and unable to obtain counsel of my own choice;"
8. that "I would have requested the Court if they would consider to permit me to leave the country voluntarily following my state prison sentence and impose a moderate sentence or just plain permit me to leave for Greece;"
9. that in reply to a statement by the prosecutor that Green was wanted down in Maine for a bank robbery he would have told the Court "I have never been in Maine in my life. I have never been indicted or have never been accused or questioned or had anything to do with any bank robbery;"
10. that "I would have advised (the Court) that under the instructions he gave to the jury he should not impose a 25 year sentence on the jeopardy," and
11. that after the verdict was returned his accomplice, one Roccaforte, had recanted testimony he had given as a government witness at the trial.

A review of the evidence adduced at the hearing clearly establishes that Green's testimony and his contentions on both issues open before this Court are totally unworthy of belief. For example, in his supplemental affidavit in support of the motion and at the hearing Green specifically stated that he was present in a room in the Federal Building in Boston on the day on which the jury returned its verdict against him; that while he was in this room the late Deputy Superintendent of the Boston Police, Justin McCarthy, interviewed Mario A. Roccaforte, who had testified as a Government witness at Green's trial; that in his (Green's) presence Roccaforte recanted his trial testimony to the effect that Green had been with Roccaforte on the night prior to the bank robbery when Roccaforte stole a car for use in the robbery.

At the hearing the Government produced Harold T. Stapleton, a stenographer employed by the Boston Police Department, who brought with him both his original shorthand notes and a transcript of the interview between Deputy Superintendent McCarthy and Roccaforte. The transcript of these notes and the independent recollection of Mr. Stapleton, both of which I believe, clearly establish that Green was at no time present in the room when Deputy Superintendent McCarthy was conducting the interview with Roccaforte. I find that Green was not in the room at any time while Roccaforte was giving his statement. This finding leaves no reasonable conclusion possible other than that Green was deliberately perjuring himself when he signed the affidavit and when he testified under oath at the hearing that he was present at this interview. On both occasions Green also swore that Roccaforte recanted his testimony that Green was with Roccaforte when the car was stolen. These statements likewise are refuted and squarely contradicted by the transcript of the McCarthy-Roccaforte interview, where the following appears (on p. 4 of Government Exhibit I):

> "Q. (by McCarthy) Green is the fellow that was with you? A. (by Roccaforte) Yes."

and (p. 5):

> "Q. When the officers approached the car with you seated at the wheel where was Green at that time? A. He was out of the car.
>
> "Q. Do you know where he was? A. Near the car, on the right hand side."

Green contends that the denial of allocution resulted in the sentencing judge being misinformed as to his status as a good family man. First of all it should be noted that at the hearing, before sentence was imposed, Green's attorney, the late Herbert F. Callahan, challenged the statement made by the prosecutor to the effect that Green had not supported his family. Mr. Callahan said, at page 25 of the October 27, 1952 transcript:

"He has got two children, one fourteen years of age, one nine years of age. He has got a wife. Notwithstanding what the District Attorney has said, he informed me he has supported them, except for the time he was incapacitated, when they were getting State Aid, because he could not work."

Green's testimony at the hearing indicates at most that he would have repeated the substance of this statement by Mr. Callahan. Over and above the fact that I find Green's attorney challenged the statement as to Green's support or non-support of his family, I also find on the basis of the evidence produced that Green was in fact convicted of assault and battery upon his wife, was convicted of non-support of his wife and child, and that the transcript of the trial which led to his conviction and the sentence here under attack establishes that he was arrested at 2:00 a. m. at gunpoint in a Chicago hotel room by a group of FBI agents, and that the agents upon entering the room found Green naked and an unidentified young girl in a nightgown. When asked "who the girl was with him in the room, Green said he did not know, she was only with him that night," and when asked as to his occupation Green replied "I rob banks." This evidence, coupled with the two convictions referred to above, is hardly the hallmark of a good family man.

To fully appreciate the frivolity of Green's contention that the experienced trial judge who sentenced him was misinformed about his family status, it must be recalled that the two convictions were noted in the pre-sentence report used by the sentencing judge and, of course, the sentencing judge heard the testimony of the FBI agents as to the arrest in Chicago, and also heard Green's attorney correct the statements of the prosecutor about Green's failing to support his family.

One of Green's sworn statements was to the effect that he had left Massachusetts between 1927 and 1952 only to take his wife to Florida on a vacation. At the hearing he admitted under cross-examination when confronted by Sgt. Madden of the Boston Police Department who was present in the courtroom at the hearing, that he had been in Indianapolis, Indiana, between November of 1944 and April 1945, and, of course, he gave a statement to the Boston Police saying that on the day before the robbery "I was in St. Patrick Cathedral in New York at the same time" (p. 14, Govt. Ex. I). Green's testimony re leaving Massachusetts is patently false.

It would serve no useful purpose to proliferate this opinion by analyzing each allegation made by Green and the evidence adduced by the Government in rebuttal, refutation or explanation of the immateriality thereof. Suffice it to say that upon the basis of the foregoing and upon the basis of Green's demeanor and manner on the witness stand, I do not believe any of his testimony, and I find that the able and experienced trial judge was not misinformed or uninformed when he imposed sentence. I find that Green would not have made any of the eleven statements listed above to the trial judge, and I find that his motions and affidavit were filed in bad faith and with all the advantages of hindsight in a brazen attempt to allege whatever would bring him within the provisions of the Hill decision quoted above, and that his testimony at the hearing was knowingly and wilfully false.

Motions to vacate denied.