**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bernard Edmond LA CLAIR, Defendant-
Appellant.**

**No. 12852.**

United States Court of Appeals
Seventh Circuit.

Dec. 28, 1960.

Bernard La Clair, pro se, Robert L. Austin, Charles A. Laff, Chicago, Ill., for appellant.

Kenneth C. Raub, U. S. Atty., Charles R. LeMaster, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

On July 7, 1954, defendant was sentenced to imprisonment for a total period of 30 years, and was fined $50,000 on his pleas of guilty to six informations which charged violations of the Federal Bank Robbery Statute, Title 18 U.S.C.A. § 2113, in Hamlet, Bourbon and Evansville, Indiana; Springfield, Massachusetts; Dunkirk, Ohio; and Kensington, Connecticut. All but one of these informations included counts for assault or putting in jeopardy the life of a person by the use of a dangerous weapon. Thus defendant was subject to possible penalties of $80,000 in fines and sentences of

20 years each on six of the counts and 25 years each on five of the counts in the various informations.

On August 24, 1959, defendant moved to vacate the sentence under Title 28 U. S.C.A. § 2255,[1] on the ground that his pleas were obtained through coercion, that prejudicial newspaper and magazine articles deprived him of a fair and impartial sentence, and that he was inadequately and incompetently represented by legal counsel.

August 26, 1959, the District Judge notified the United States Attorney and directed him to file a responsive pleading to defendant's motion. Such pleading was filed on September 21, 1959, and copy thereof was received by defendant on September 27, 1959. On September 29, 1959, the District Judge, without oral hearing, denied defendant's motion on the ground that the files and records conclusively showed defendant to be entitled to no relief. The District Judge also filed a short memorandum which contains comments on the competence of defendant's counsel, both chosen by him and not appointed by the Court, a statement that the record shows defendant's pleas to have been voluntarily made, and that the record answers defendant's charges.

Defendant's reply to the United States Attorney's responsive pleading was filed on October 10, 1959. It was treated as a motion for rehearing, and was denied on October 20, 1959.

It is defendant's position that the District Court erred in summarily denying his motion without a hearing because the specific factual allegations are based on facts largely outside of the record and cannot therefore be answered by the record. For example, defendant asserts that he was threatened with arrest of various members of his family if he failed to cooperate with the representatives of the Federal Bureau of Investigation and the local police, and that he agreed to say and sign anything requested of him only after he saw his sister in police custody. He states that he was not arraigned until 36 hours after arrest when a United States Commissioner came to the police headquarters at 2:30 A.M. instead of permitting him

[1]. "§ 2255. Federal custody; remedies on motion attacking sentence.

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

"An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

to be brought to the Commissioner during regular court time; that he was held in virtual solitary confinement in a small, hot cell, without running water and without a bed, while subjected to constant interrogation by Federal Bureau of Investigation agents. He states that his attorneys did nothing to improve his conditions of confinement, and never interviewed him prior to appearance in court, but did permit reporters to visit him and to publish prejudicial articles about him; that he was improperly advised to plead guilty in spite of the fact that evidence against him had been illegally obtained and could not be used to sustain a conviction. Thus, defendant contends that the files and records of this case cannot refute his allegations that his pleas were coerced, that he was incompetently represented by counsel, or that he was prejudiced by unfavorable publicity.

This Court has closely scrutinized the record.

Defendant waived indictment, consented individually to disposition of each of the six informations in the District Court for the Northern District of Indiana, pursuant to statute, in two separate sessions on May 26 and July 7, 1954, before District Judge Swygert, who also ruled on defendant's instant motion. The two counsel of defendant's choice were both present on each occasion. A presentence investigation was ordered after the first session.

There were repeated interchanges between the Court and defendant on both occasions, with reference to such matters as defendant's right to grand jury investigation and indictment, defendant's right to trial in Massachusetts, etc., defendant's understanding of the charges and the possible penalties, the voluntary nature of his pleas and the absence of coercion.

Defendant argues that having been coerced into pleading guilty, it follows that his answers to questions concerning his pleas would be made under the same coercion. However, defendant did not merely answer the Court's questions. He spoke at length to the Court, even volunteering statements concerning newspaper and magazine articles about which the Court had not asked, and, uninvited, commenting on another man involved in one of the robberies, but not tried with defendant. The inescapable impression gained from reading the transcript is that defendant was not only free from any restraint or coercion, but wholly at ease in the courtroom.

Defendant is critical of his counsel's judgment in advising him to plead guilty to the numerous charges, rather than to stand trial, on pleas of not guilty, in the various jurisdictions. Some support for his counsel's advice may be found in defendant's own statements made in open court. At one point, he told Judge Swygert:

"I actually walked in several banks, sat down in a chair, ordered the cashier out of the chair, giving him my bag, by way of filling it up, and he did, without even my saying it was a hold-up. I have done that in Evansville and several other places. Just by knowing of my gun being in my arms, lying there, they took it for granted, and immediately gave me all of the cash." Transcript, Vol. 1, p. 39.

Again, in answer to inquiry from the Court about a purported statement that after the first bank robbery, defendant found the rest really easy, defendant said:

"I did say Springfield was my biggest job. However, after eight or nine I was sort of a professional. Those were questions put to me by the reporter, and all I was doing was answering his questions that the reporter was putting to me." Transcript, Vol. 1, p. 37.

One of the defendant's attorneys, a former Assistant United States Attorney, presented a moving plea in mitigation, in which he outlined the various physical, economic and psychological handicaps under which defendant had labored, all with a wealth of detail which evidenced careful investigation and prep-

aration. Counsel described a pattern of unrelieved misfortune which brought defendant to an economic crisis and so warped his judgment that he chose the wrong way out. Counsel argued that Congress had never intended the maximum penalties in the statute for a man like defendant, who, confronted with tremendous economic distresses, in the short space of a year, had committed the crimes charged, in what was more or less a single episode in his life, now terminated, which would not be repeated.

The record suggests that it was defendant's counsel who urged that all the cases be disposed of in the one court. Thus even the prosecutor, figuring possible penalties roughly at 220 years, immediately said that this would be all out of proportion to the crimes committed. Counsel also argued the legal point of separate sentences under the several sections of the Federal Bank Robbery Statute. The District Court, in imposing sentence, took note of this argument.

One of the defendant's counsel explained about the newspaper article which the Court mentioned, stating that defendant had been confined, alone, in the mental ward, for much of his time in the Allen County Jail, because of the Jail's lack of facilities; that counsel had allowed the reporter to see defendant only on the reporter's promise that the story would not be harmful to defendant, having in mind the fact that defendant had already been the subject of local publicity. Counsel expressed the opinion that, after this long period of being alone, defendant might have spoken carelessly.

Defendant himself spoke to the Court at length about some of the statements he had made, explaining some and denying others. However, defendant did not deny one quotation attributed to him:

"Lots of people ask me if I am sorry. I just can't say that. I had a good time."

He reaffirmed it, stating directly to Judge Swygert:

"I really can't say I am sorry. * * * I never did tell anyone I was sorry, and I have never denied it, * * *" Transcript, Vol. 1, pp. 37–38.

From defendant's own statements, made in open court, before sentencing, it appeared that the newspaper reporter had openly taken notes of defendant's answers, and that defendant had willingly answered the reporter's questions. Defendant spoke very freely to Judge Swygert, commenting on other articles about him, to which the Court had not referred. Both of defendant's counsel and the reporter told Judge Swygert that some of the information in the article which had come to the Judge's attention was obtained from sources other than defendant. However, the prejudicial aspects of the article: the presentation of defendant as a man not only lacking in penitence for his misdeeds but looking upon them as some kind of accomplishment—were supported by defendant's own statements, often volunteered, in open court.

We are constrained to agree with the District Court that the record refutes defendant's assertions that he was coerced in his pleas; that he was incompetently represented by his counsel; or that the newspaper articles of which he complains deprived him of a fair and impartial sentence.

We have carefully considered all other points raised by defendant, none of which alters our conviction that the District Court's order must be affirmed.

This Court is grateful for the able and conscientious efforts of court-appointed counsel Robert L. Austin and Charles A. Laff, of the Illinois bar, who represented the defendant in this appeal.

Affirmed.