Warren David **SMITH**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 17842.

United States Court of Appeals
Ninth Circuit.

Sept. 11, 1962.

Rehearing Denied Nov. 19, 1962.

See also 287 F.2d 270.

Warren David Smith in pro. per.

Brockman Adams, U. S. Atty., and Ronald G. Neubauer, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and HODGE, District Judge.

MERRILL, Circuit Judge.

On June 8, 1953, appellant pleaded guilty to the crime of bank robbery as charged in three counts of an information. Count I charged theft from a bank in Lynnwood, Washington, under 18 U.S.C. § 2113(b). Count II charged entering the bank with intent to commit robbery under § 2113(a). Count III charged under § 2113(d) [1] that in committing the offenses charged in the other counts, appellant had "assaulted one Kenneth Killien and others and put their lives in jeopardy by the use of a dangerous weapon."

Upon his plea, appellant was sentenced on Count I to ten years' imprisonment and to pay a fine of $1.00, on Count II to twenty years' imprisonment and to pay a fine of $5,000.00, on Count III to twenty-five years' imprisonment and to pay a fine of $10,000.00. The prison terms were ordered to be served concurrently.

[1]. "Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

On September 29, 1958, by order of the district court, the judgment, sentence and commitment under Counts I and II were vacated and set aside. Appellant is now serving his sentence under Count III.

In the present proceedings, by what he has in propria persona designated as a motion in the nature of a writ of error coram nobis, appellant attacks the validity of the sentence imposed upon him. He asserts that his plea of guilty was entered by him under a misunderstanding as to the nature of the offense set forth in § 2113(d), which misunderstanding was based upon erroneous advice as to the nature of the offense given to him by counsel for the United States in open court at the time of arraignment.

This motion was denied by the district court without opinion or comment and this appeal followed.

■ The United States has not seen fit to answer the contentions of appellant upon the merits, but has confined itself to the proposition that this is not a proper case for coram nobis. We agree. Accordingly, pursuant to our custom in dealing with such petitions in propria persona, we shall treat this motion as one for relief under 28 U.S.C. § 2255.

■ So regarded, the motion has merit.

The record shows that at the time of arraignment, after pleas of guilty to Counts I and II had been entered, the following took place:

"THE COURT: * * * Count III, read the contents of that and the nature of it.

"(Whereupon Mr. Harris [counsel for the United States] read Count III of the information to the defendant)

"THE COURT: And will you state what you are informed is the maximum penalty under the law. ·

"MR. HARRIS: 25 years as to Count III.

"THE DEFENDANT: Was there a definition of assault in this case? Does that mean done bodily harm?

"THE COURT: That is where we have the question as to whether you should waive the right of Counsel. Mr. Harris, can you give the defendant any idea as to what the government means by the charging words in Count III?

"MR. HARRIS: Yes, your Honor. By assault the Government and the wording of the Statute, and in this Count, charges that you used a dangerous weapon, to-wit, a gun, whether the gun was loaded or not makes no difference, and you pointed it in the direction of Kenneth Kallen and ordered him to perform certain acts against his wishes.

"THE COURT: Are some of the words explanation rather than statements in the Count?

"MR. HARRIS: Yes, your Honor.

"THE COURT: Such is the characterization you made about the gun?

"MR. HARRIS: Yes, your Honor. That is defining the dangerous portion and relationship, the dangerous weapon to the word 'assault.'

"THE COURT: Now, he asked about assault. What is the Government's meaning by using the word 'assault'?

"MR. HARRIS: Pointing a dangerous weapon, which would be a gun or some other deadly instrument towards a person. In this instance, Kenneth Kallen.

"THE COURT: Is there any other explanation that you wish?

"THE DEFENDANT: No, sir.

"THE COURT: Do you understand the contents of the charge?

"THE DEFENDANT: Yes, sir."

In advising appellant that "whether the gun was loaded or not makes no difference" counsel for the United States was in error. Smith v. United States, 5 Cir., 1960, 284 F.2d 789; Wagner v. United States, 9 Cir., 1959, 264 F.2d 524; United States v. Donovan, 2 Cir., 1957, 242 F.2d 61; Meyers v. United

States, 5 Cir., 1941, 116 F.2d 601. In the Wagner case this court stated, 264 F.2d at page 530:

"We agree that the aggravated form of robbery described in the latter part of § 2114 as putting 'life in jeopardy by the use of a dangerous weapon' means more than a 'mere holdup by force or fear.' It must be a holdup involving the use of a dangerous weapon actually so used during the robbery that the life of the person being robbed is placed in an objective state of danger."

In his petition appellant states:

"If the petitioner had known that he could not have committed an offense under subsection (d) without using a loaded gun and without putting the life of the victim in an objective state of danger he would not have entered the plea which resulted in the extra five years."

Reversed and remanded with instructions that relief under 28 U.S.C. § 2255 be granted appellant upon this petition and for further proceedings.