Bernard E. LaCLAIR, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civ. No. 3596.

United States District Court
N. D. Indiana,
South Bend Division.

May 4, 1965.

Bernard E. La Clair, pro se.

No appearance for the United States.

GRANT, Chief Judge.

This is a motion, pursuant to Title 28, Section 2255 of the United States Code, to vacate or correct the sentence of imprisonment imposed upon petitioner when he pleaded guilty to each of six charges of bank robbery, such charges constituting violations of Title 18, Sections 2113(a) and (in five of the six) 2113(d) of the United States Code. Petitioner was sentenced to imprisonment for a period of thirty years by Judge Luther M. Swygert (now a Circuit Judge), in this Court, on July 7, 1954.

I.

In order that a more clear understanding may be had of the Court's evaluation of the motion now before it, it is well to begin with a brief résumé of this petitioner's previous Section 2255 motions filed in and ruled upon by this Court.

As already indicated, this petitioner was sentenced on July 7, 1954, on his pleas of guilty to six separate cases charging him with six bank robberies under the several appropriate subsections of Title 18, Section 2113 of the United States Code. Two of those cases originated in this District, while the other four were disposed of here under Rule 20 of the Federal Rules of Criminal Procedure on transfer from Massachusetts, Connecticut, Ohio, and the Southern District of Indiana. Five of the six cases included counts for assault or putting in jeopardy the life of a person by the use of a deadly weapon, as set forth in Subsection (d) of Section 2113. For all of the six cases, petitioner was sentenced to serve thirty years in prison and to pay fines in the total amount of fifty-thousand dollars ($50,000.00).

Eight days after this sentence was imposed, petitioner and two other prisoners attempted to escape from the St. Joseph County jail, located in South Bend, Indiana, wherein petitioner was being held awaiting transfer to a federal prison. Thereafter, petitioner pleaded guilty to an information charging violation of Title 18, Section 751 of the United States Code. On this attempted escape charge, petitioner was sentenced to an additional prison term of five years "to be served consecutively to the sentence received on July 7th," and fined an additional five-thousand dollars ($5,000.00), said sentence imposed by Judge Swygert on July 23, 1954. Any doubt about the fact that this was an additional five-year term, to run consecutively with the bank robbery sentences, was removed following denial of petitioner's Rule 36 motion and affirmance thereof by the Seventh Circuit Court of Appeals in LaClair v. United States, 303 F.2d 602 (7th Cir. 1962).

Some five years later, on August 24, 1959, this petitioner filed his first motion to vacate sentence under Section

2255. That earlier petition was based on allegations that petitioner's pleas of guilty were obtained through "threats, promises and coercion"; that he was "exploited by newspapers and magazine articles shortly before appearing before (sic) trial" and that the same were "prejudicial"; and that his counsel promised to protect his rights, which promises were broken. That 2255 motion was denied and the denial thereof was affirmed on appeal. United States v. La-Clair, 285 F.2d 696 (7th Cir. 1960), cert. den. 365 U.S. 854, 81 S.Ct. 820, 5 L.Ed.2d 818 (1961).

On August 21, 1963, petitioner filed a second motion to vacate and correct sentence. Therein petitioner alleged, *inter alia,* that he "was victimized (sic) of a collusional arrest between State, Local and FBI authorities"; that "the rules of 5(a) Federal Rules of Criminal Procedure were not adhered to subsequent to (his) arrest without a warrant"; that his pleas of guilty "were the results of inducements, threats, promises and coercion by State, Federal and FBI officers and by (his) attorney's (sic)"; and that he was not provided effective or competent assistance of counsel. This 2255 motion was denied by Order of this Court on December 20, 1963. Thereafter, on February 3, 1964, petitioner filed a motion for reconsideration and/or rehearing of the Order of December 20th. This latter motion was denied on February 24, 1964.

Then, on April 15, 1964, petitioner sent to this Court a letter requesting that he be granted an extension of time to file Notice of Appeal from the February 24, 1964, denial of his motion for reconsideration of the denial of his prior motion to vacate sentence. In that letter, petitioner informed the Court that he had filed for executive clemency and that "application for pardon or commutation will not be considered * * * pending appeals from judgments of conviction." Be that as it may, by its Order of April 23, 1964, this Court stated that it had no authority to grant an extension of the time in which to file Notice of Appeal, but, under the circumstances, would treat petitioner's letter as the filing of his Notice of Appeal. The Court further stated that if petitioner did not desire to pursue his appeal, he could upon notice to the Clerk, enter a dismissal thereof.

On April 23, 1964, petitioner filed what he termed "a supplemental motion to petitioner's motion 2255 dated August 21, 1963." Thereafter, on May 18, 1964, the application to treat the "motion" as "supplemental" was denied, and the Court ordered that the motion of April 23, 1964, to be treated as a new and independent motion under Section 2255.

With regard to petitioner's appeal of the Order of February 24, 1964, this Court, on June 8, 1964, after a full review of all the files, denied leave to appeal in forma pauperis and certified that petitioner's application to this end was not taken in good faith. On June 11, 1964, the Seventh Circuit (Knoch, Circuit Judge) denied petitioner's motion for leave to file an appeal in forma pauperis.

It has already been noted that petitioner's Section 2255 motion of April 23, 1964, was ordered treated as a new such motion rather than "supplemental" to his prior motion of August 21, 1963. The merits of this motion were considered by the Court and disposition was rendered thereon on November 13, 1964. In this motion, it was contended that relief should be granted for the reason that petitioner was "incompetent" at the time of the entry of the pleas of guilty, both on the date of arraignment and the date of sentencing. Other than the bald conclusory statement of petitioner's incompetency, the contention was otherwise entirely unsupported by allegations of fact. On grounds that the pleadings were insufficient, this Court denied the motion without prejudice to a renewal of same, if legally sufficient. If properly supported by allegations of fact, the Court indicated, such a similar Section 2255 motion would not be considered repetitious.

## II.

Thus prefacing the Court's consideration of the motion to vacate now before it with a review of this petitioner's prior motions for similar relief is both proper and appropriate for the reason that Section 2255 explicitly states that, "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." More shall be said of this later; consideration now turns to the merits of the motion at hand.

## A.

The first of the three contentions raised by petitioner herein is that he was not "afforded effective assistance of counsel prior to and at the time of sentencing." More specifically, petitioner now contends that he was insane at the time he committed the offenses for which he stands convicted and, therefore, "petitioner's counsel failed to render effective assistance of counsel in not requiring petitioner to stand trial on the criminal charges and setting up (sic) insanity as a defense."

Inasmuch as the issue of this petitioner's being afforded effective and competent counsel—counsel which, incidentally, was obtained and paid by petitioner himself—has been before this Court on two of his prior Section 2255 motions (motions of August 24, 1959, and August 21, 1963), it may be disposed of adversely to petitioner summarily. Green v. United States, 313 F.2d 6 (1st Cir. 1963), petition for cert. dismissed 372 U.S. 951, 83 S.Ct. 948, 9 L.Ed.2d 976 (1963), on remand 219 F.Supp. 750 (D. Mass.1963), affirmed 334 F.2d 733 (1st Cir. 1964). In this respect, the memorandum opinion (unpublished) of Judge Swygert of September 29, 1959, appended to the Order denying petitioner's first Section 2255 motion, stated:

"The petitioner was represented by two respected and competent attorneys of the Fort Wayne, Indiana, Bar. One of them is a former Assistant United States Attorney for the Northern District of Indiana."

Finally, the claim that his attorney was ineffective is of no avail on a motion under Section 2255 unless counsel's failure was such as to make the proceedings against the defendant a farce and a "mockery of justice". United States v. Wight, 176 F.2d 376 (2d Cir. 1949), cert. den. 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950); United States v. Miller, 254 F.2d 523 (2d Cir. 1958); Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436 (1963), cert. den. 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964). On the record in this case, it is impossible to make such a finding now, just as it was impossible twice in the past.

## B.

Petitioner's second contention raised herein is that he was mentally incompetent prior to and at the time of sentencing. There is no doubt that the remedy under Section 2255 is available to test the mental competency of a criminal defendant to understand the proceedings against him and of his mental ability at the time to enter a legally valid plea of guilty. Nunley v. Taylor, 330 F.2d 611 (10th Cir. 1964); United States v. Thomas, 291 F.2d 478 (6th Cir. 1961). Before determining whether a hearing is necessitated on this contention, the Court need evaluate the allegations made by petitioner in support thereof.

Petitioner's first allegation involves a rather unique and intriguing exercise in logic. He begins with reference to the following language of the Seventh Circuit Court of Appeals found in that Court's opinion affirming the denial of petitioner's first Section 2255 motion, United States v. LaClair, 285 F.2d at 699:

"* * * Counsel described a pattern of unrelieved misfortune which brought defendant to an economic crisis and so warped his judgment that he chose the wrong way out."

From this statement, petitioner then proceeds to lift the word "warp", which,

with dictionary in hand, he then defines as a "mental * * * aberration". "Aberration", in turn, is defined as "unsoundness of mind"; an "unsound mind" is defined as a mental "infirmity"; "infirmity" is defined as an "ailment of a substantial character"; and, finally, "ailment" is defined to mean "something which substantially impairs the health of a person, materially weakens the vigor of his constitution, or seriously deranges his vital functions." The apparent conclusion of the foregoing is, inevitably, that petitioner was "deranged" at the time of sentencing.

The frivolousness of this allegation is clearly apparent to the Court. First of all, when this Court denied petitioner's previous Section 2255 motion grounded on "incompetency", on November 13, 1964, it did so for failure of petitioner to allege supporting facts, and, in effect, invited a subsequent motion wherein such facts would be alleged. This allegation is not concerned with facts, but with words. We fail to see in this allegation any but the most remote reference to the facts of the case. Secondly, returning to the statement made by petitioner's counsel mentioned by the Seventh Circuit and quoted above, it is clear that the reference therein was not to petitioner's mental capacity at the time he was arraigned or sentenced, but rather to the "judgment" he made at the time the bank robberies were committed. As such, this entire excursion into word meanings is irrelevant.

In like manner, petitioner builds his second allegation in support of the contention of incompetency at the time of sentencing upon a statement made by counsel in his behalf. Petitioner quotes from a "petition for a Writ of Certiorari to the United States Court of Appeals for the Seventh Circuit filed in the Supreme Court" (of which this Court has no copy), wherein his counsel allegedly stated:

"If this Court grants Certiorari, we will show from the record that petitioner's statements in the sentencing court were so * * * dis-

organized * * * that they were untrustworthy and, if they prove anything, they tend to prove that his * * * mental processes were indeed upset, * * * perhaps by duress."

Petitioner further states that this Court should review the transcript of the proceedings against him, particularly the "severe unrealistic statements" made by petitioner to the Court at that time. One of such statements referred to by petitioner is as follows:

"*Defendant LaClair:* Well, your Honor, actually that is something that probably a lot of people will never know, but I really can't say I am sorry, because I never really hurt anyone, although I took money wilfully and with a sawed-off shotgun. I never did tell anyone I was sorry, and I never have denied it, although anyone in my position, as I stand here now, would know that the man is definitely sorry, one way or another. After all I am going to prison, I am going to serve quite a bit of time; I know that. I am trying to keep up that spirit of going in there and coming out the same way, not the same way of entering the banks, but I mean with the knowledge of getting out and taking care of my wife and children.

"I have made a lot of checks with the F.B.I. I think that any one of them could vouch for me. I have always said I should have gotten into their line of work. The only trouble was lack of education."

Further reference might be made to the following exchange between petitioner and the Court at the time of sentencing:

"*The Court:* Well, did you say (to a certain news reporter) your first robbery was the big one for you, it helped you to develop a professional attitude, and the rest was easy, really easy?

"*Defendant LaClair:* No, sir. I did say Springfield was my biggest job. However, after eight or nine

I was sort of a professional. Those were questions put to me by the reporter, and all I was doing was answering his questions that the reporter was putting to me."

A review of these excerpts along with the entire transcript has convinced the Court that such allegations of incompetency are entirely unfounded. To be sure, petitioner's remarks to the Court at that time indicated a certain amoral outlook on life together with some pride in his criminal behavior. But the Court is of the considered opinion that the record, upon which petitioner's allegations are based, does in no way support the contention here raised. Far from being "rambling and disorganized", petitioner's comments to the Court were more often surprisingly direct and discerning.

■■■ The Court wishes to make it clear that it does not only hold that the aforementioned allegations of fact do not support the contention of incompetency, but that said allegations are insufficient in and of themselves. The allegations as set forth are no more than frivolous and self-serving attempts to create "facts" out of statements made by petitioner and counsel who represented him. Moreover, nothing has been alleged *dehors* the record, and, accordingly, the Court disposes of the allegations on the basis of the record. It has been held that, in determining whether a hearing is required on a Section 2255 motion, the court must accept as true the allegations of fact contained in the motion *except as they may be contradicted by the record.* United States v. Davis, 212 F.2d 264 (7th Cir. 1954). Furthermore, these allegations in no way can be said to rise to the stature of a confirmed history of mental or emotional illness as alleged in Fisher v. United States, 317 F.2d 352 (4th Cir. 1963), which petitioner cites to the Court, and Hyatt v. United States, 223 F.Supp. 594 (D.Colo.1963). Finally, the fact that petitioner waited eleven years after the fact and until the filing of his fourth Section 2255 motion to make the allegation of incompetency, while not conclusive, is an indication that said allegation lacks merit. Bistram v. United States, 180 F.Supp. 501 (D.N.D.1960), affirmed 283 F.2d 1 (8th Cir. 1960), cert. den. 366 U.S. 921, 81 S.Ct. 1096, 6 L.Ed. 2d 243 (1961).

C.

The third and last of petitioner's contentions raised in this petition is that, at the time he pleaded guilty to the charges brought against him, he was harboring a misapprehension as to the law and that, therefore, his plea was not understandingly made. The allegation is made that at no time during any of the nine bank robberies in which petitioner was the principal was his sawed-off shotgun loaded. For this reason, it is contended that petitioner could not have been guilty of a violation of Subsection (d) of Section 2113 of Title 18. That Section provides:

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

Four of the six informations filed against petitioner charged him with putting in jeopardy the life of a person under Subsection (d); one of the six informations, however, charged petitioner, in the conjunctive, with assault and putting in jeopardy the life of a person pursuant to Subsection (d); the remaining information did not charge a violation of Subsection (d).

In his petition for Section 2255 relief, petitioner has attached several exhibits consisting of photostatic copies of newspaper reports of the various bank robberies for which petitioner was convicted. Each of the four newspaper articles contained in the exhibits indicates a statement made by LaClair that the weapon was never loaded. This assertion was reiterated by the petitioner at

the time of sentencing and was also mentioned by counsel, both for petitioner and the Government, at that time.

Review of the transcript of the proceedings in this Court on July 7, 1954, at which time petitioner was sentenced, reveals the following excerpts relating to the point here in issue. First, Mr. Lesh, the Assistant United States Attorney:

> "* * * He (LaClair) used a sawed-off twelve-gauge shotgun on each of the jobs to intimidate the various bank employees. It has always been the contention of the defendant LaClair that the gun was not loaded. However, the information that I have is unsatisfactory on that subject. What I mean to say is, so far as our office is concerned, we have no evidence other than his word as to whether the gun was or was not loaded. *I assume that under the law, however, Section (d) has been violated, whether the gun was loaded, or not.*" (Emphasis supplied.)

No objection was made to the emphasized portion of the foregoing remarks of Mr. Lesh by petitioner or counsel acting in his behalf. However, defense counsel Kennerk thereafter did say:

> "* * * He (LaClair) tells me that at no time did he menace or point this shotgun at any of these individuals (bank employees). Suffice it to say they knew it was there and he could very readily do it. But, as the United States Attorney has said, he did not point the gun, he did not have a loaded gun, to his knowledge, and I am so advised by my client."

To this statement, Mr. Lesh later replied:

> "One other thing: I don't believe I said that the gun that LaClair used was not loaded. I think I said that he stated it was not loaded, and I frankly don't know."

From this record and particularly in light of the above-quoted statement of the Assistant United States Attorney, it is difficult not to conclude that all involved in the July 7, 1954, proceeding—the Court, the defendant, and counsel for both the defendant and the Government—were of the impression that a violation of Subsection (d) of Section 2113 occurs irrespective of "whether the gun was loaded, or not." We hasten to add, however, that such an "impression" at that time was not unwarranted: prior to 1954, there is, to our knowledge, only one case which could possibly be interpreted to indicate to the contrary. That case, Meyers v. United States, 116 F.2d 601 (5th Cir. 1941), involved a prosecution under Title 12, Section 588, the predecessor to the statute here in question. The court held that an information charging the defendant with putting a certain bank officer "in fear for his life" by the use of a dangerous weapon (under Section 588(a)) would not support a sentence for putting "in jeopardy the life of any person" by the use of a dangerous weapon (under Section 588(b)). Noting the distinction between putting a person "in fear" and putting a life "in jeopardy", the court said (at 603):

> "* * * The pistol may have been only exhibited and not pointed, it may indeed not have been loaded, for only putting in fear is alleged and not actual jeopardy or danger to the life of Jones."

However, in 1957, three years subsequent to this Court's disposition in the LaClair case, this point of law began a development which has continued to the present day. The development may be traced in the following cases (two of which petitioner has cited to the Court):

a. United States v. Donovan, 242 F.2d 61 (2d Cir. 1957).

b. Wagner v. United States, 264 F.2d 524 (9th Cir. 1959).

c. Smith v. United States, 284 F.2d 789 (5th Cir. 1960).

d. Bram v. United States, 302 F.2d 58 (8th Cir. 1962).

e. Smith v. United States, 309 F.2d 165 (9th Cir. 1962).

f. Wheeler v. United States, 317 F.2d 615 (8th Cir. 1963).

g. United States v. Roach, 321 F.2d 1 (3rd Cir. 1963).

Undoubtedly, the development received its greatest impetus from the late Judge Medina's opinion in United States v. Donovan, supra (a). In this well- but closely-reasoned decision, Judge Medina stated that the term "jeopardy" refers to "an objective state of danger, not to a subjective feeling of fear." He concluded: "Persons are put in fear, lives are not; they are put in danger." Id., 242 F.2d at 63. It is this language, this holding, that found expression in the several cases to follow.

Although Donovan was cited in five of the six subsequent cases outlined above, it was not until the 1962 case of Smith v. United States, supra (e), that the rule was expressly made applicable to Section 2113. This is so for the reason that Donovan and the two cases immediately following Donovan—Wagner v. United States, supra (b), and Smith v. United States, supra (c)—were not Section 2113 prosecutions for bank robbery, but rather were prosecutions under Section 2114 for robbery of one having lawful custody of mail, money, or other property of the United States. The two most recent decisions of Wheeler v. United States, supra (f), and United States v. Roach, supra (g), involved violations of Section 2113, but the cases relied on in each are the earlier Section 2114 cases. The one remaining case, Bram v. United States, supra (d), also a Section 2113 prosecution, is relevant here only for the reason that the court indicated that the charge of "putting a life in jeopardy" was dropped by the Government when it appeared that "the gun used was 'unloaded'," without enunciating a principle of law to that effect.

Upon a review of the foregoing cases, one can hardly but conclude that the development of the point of law here in issue admits of some confusion, primarily because of the rather indiscriminate references by the courts to Section 2113 on the one hand and to Section 2114 on the other, without making the slightest acknowledgment of the variance in language used in the respective statutes. This confusion is evidenced by the fact that, in arriving at the result in Donovan, Judge Medina stressed the difference in possible punishment between the two offenses defined in Section 2114. He said (at 63):

" * * * The Congress declared that one who assaults a postal employee with intent to rob the mails is punishable by a term of 10 years, but that the punishment should be 25 years if the employee's life was put in jeopardy by the use of a dangerous weapon. We think the Congress intended a significant difference between the assault punishable by 10 years' imprisonment and the assault punishable by 25 years' imprisonment. That difference, we believe, was meant to be, not whether the employee was put in fear, but whether his life was put in danger by the use of a dangerous weapon."

Of course, under Section 2113(d), there is no difference in the prescribed punishment for "putting a life in jeopardy by the use of a dangerous weapon" and the aggravated assault contemplated therein. Furthermore, the difference between the possible punishment for the simple assault set forth in Section 2113(a) and either offense defined in Section 2113(d) is not 15 years, but only five years. Certainly "the intent of Congress" as divined by Judge Medina and which compelled (in part) the result in Donovan, is not nearly as persuasive when Section 2113, rather than Section 2114, is in issue.

In summary, suffice it to say that this Court acknowledges the holding of three (and only three) Circuit Courts of Appeals—the Third, Eighth, and Ninth—to the effect that the charge of "putting a life in jeopardy by the use of a dangerous weapon" under Section 2113(d) requires an "objective state of danger" rather than merely a "subjective feeling of fear." However, this Court—at this date and upon this Section 2255 motion

—is not prepared to make such an interpretation of Section 2113(d), for two reasons: First, neither the Court of Appeals for the Seventh Circuit nor the United States Supreme Court have so ruled; and, secondly, even *assuming* such interpretation to be the law, we do not feel that this petitioner is entitled to relief.

The latter reason, more important for our purposes here, may be best illustrated by reference to Smith v. United States, supra (e)—the case of all those heretofore cited most closely analogous to the facts of the case now before the Court. In this case, also involving a Section 2255 motion, it appeared that the petitioner had previously pleaded guilty to a three-count information charging violation of Sections 2113 (a), (b), and (d). On his plea of guilty, petitioner was sentenced to twenty, ten, and twenty-five years' imprisonment on the respective counts. Petitioner attacked the sentence imposed under Section 2113(d) on the ground that "his plea of guilty was entered by him under a misunderstanding as to the nature of the offense set forth in § 2113(d), which misunderstanding was based upon erroneous advice as to the nature of the offense given to him by counsel for the United States in open court at the time of arraignment." Id., 309 F.2d at 166. It appeared that the Government attorney advised petitioner at the time of arraignment that "whether the gun was loaded or not makes no difference." This, the court held, constituted error; and appropriate relief was granted under Section 2255.

This case, however, is distinguishable from the one at hand in two respects: first, in the 1962 Smith case, petitioner appeared before the court for arraignment and sentencing unrepresented by counsel acting in his own behalf; and, secondly, in 1962 four cases of the Donovan line were at that time on the books. These two interrelated factors lead this Court to the conclusion that the essence of this petitioner's claim for relief on the ground that his plea of guilty was entered under a misapprehension as to the nature of the offense is actually the restatement in a different form of his previous contention that he was not afforded effective and competent assistance of counsel.

As has already been indicated, when petitioner was sentenced by this Court in 1954, three years were yet to pass before the Donovan rule was handed down with respect to Section 2114 and eight years were yet to pass before that rule was to be applied to Section 2113(d). This record, at least, indicates that the meaning of Section 2113(d) was unquestioned at that time and that the prevailing notion in 1954 was that a showing of objective danger was not requisite to a conviction thereunder. Furthermore, the record supports the view that not only was the United States Attorney of this persuasion, but that counsel for petitioner were similarly inclined. Reliance, therefore, was placed in the opinion of retained counsel by the petitioner and not, as in Smith, solely in the legal opinion held by counsel for the Government.

We turn first to the fact that the meaning of Section 2113(d) was unquestioned in 1954 and that the prevailing interpretation at that time was that a showing of objective danger was not requisite to a conviction thereunder. This is borne out by the statement of the Assistant United States Attorney at the proceeding of July 7, 1954, supra, and by the additional fact that his view was not thereafter challenged. But more importantly, this fact is evidenced by Judge Medina's evaluation of pre-1957 law on this point as he stated it in the Donovan case, supra (a), 242 F.2d at 63:

"The earlier case law on this point is confusing. When the question first arose in 1818, the court held that 'putting his life in jeopardy' meant 'putting the mail carrier in fear and his life in peril or danger.' * * * Twelve years later the question arose again * * * (and) * * * the court explained to the

jury that 'jeopardy' meant 'peril and danger,' that 'it is a question of danger, not of fear,' and 'that the subject of your inquiry is whether his life was put in peril.' At the same time, the court also spoke of 'a well grounded apprehension of danger to his life' and the postal carrier 'really' believing that his life was in danger * * *." (Citations omitted.)

Judge Medina concluded that, because he was satisfied that " 'jeopardy' means danger and not fear", he need not "analyze and distinguish those earlier cases." Ibid. This Court, even when the 1941 Meyers case, supra, is thrown into the balance, must agree with Judge Medina that, prior to 1957, the "earlier case law on this point is confusing." Furthermore, we are of the opinion that, beginning with the 1957 Donovan decision and extending to the 1962 and 1963 Section 2113 cases, the law in this regard underwent a decisional change of no small significance.

With regard to the fact that petitioner clearly placed reliance on the legal opinions of his own attorneys, the following excerpt from the petition now before the Court is particularly enlightening:

"Petitioner, prior to the arrairnment (sic) of May 26, 1954 and the proceedings of July 7, 1954 advised both retained counsel, Mr. Kennerk and Mr. O'Dowd, that during these robberies that I committed, I never had any shells in my shotgun and further, that I wanted my attorneys to let the judge know this because maybe it will (sic) help me receive a lighter sentence. Mr. Kennerk and/or Mr. O'Dowd stated to me, that due to the fact that I had a gun with me on these robberises (sic) it wouldn't make any difference to the judge whether it was loaded or not in reference to the sentence I was to receive. Mr. Kennerk and/or Mr. O'Dowd further stated that I was charged with a violation of Section 2113(a) and 2113 (d), that 2113(a) covers the fact that I robbed a bank and 2113(d) covers the fact that during this robbery I put lives in jeopardy by means and/or use of a dangerous weapon by just pointing the gun at the bank employees or other persons and also, whether this gun was loaded or not.

"Your petitioner has been under this misaprehension (sic) about subsection (d) up to about two (2) weeks ago. I was informed by a fellow inmate that my theory was all wrong and given the Federal Reporter numbers of SMITH v. UNITED STATES, 309 F.2d 165 (9th Cir., 9–11–62). I then sent to the West Publishing Co. for this case. My inmate friend was absolutely right. My theory and also Mr. Kennerk's and/or Mr. O'Dowd's information to me about what constituted a violation of subsection (d) was all wrong."

A situation similar to this existed in Alexander v. United States, 290 F.2d 252 (5th Cir. 1961), cert. den. 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961), also a case before the court on a Section 2255 motion. It appeared that midway during the trial for a narcotics violation, petitioner, upon advice of counsel, changed his plea from not guilty to guilty. The change of plea came after petitioner had lost on his counsel's motion to suppress certain evidence. Within a year, however, the United States Supreme Court, in the important search-and-seizure case of Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1959), handed down a decision which would have compelled the granting of the defense motion to suppress. In his Section 2255 motion, petitioner alleged that his plea of guilty was entered without full understanding. Denying the motion in this respect, the court said: (290 F.2d at 254):

"* * * The entry of the plea of guilty on counsel's recommendation will not be set aside merely because the recommendation was based upon a legal opinion which subsequent events proved wrong."

Moreover, it has been repeatedly held that subsequent changes in substantive decisional law does not warrant relief under Section 2255. United States v. Heinecke, 209 F.Supp. 526 (D.D.C.1962), aff'd 115 U.S.App.D.C. 34, 316 F.2d 685 (1963), cert. den. 375 U.S. 846, 84 S.Ct. 101, 11 L.Ed.2d 74 (1963); United States v. Sobell, 204 F.Supp. 225 (S.D.N.Y. 1962), aff'd 314 F.2d 314 (2d Cir. 1963), cert. den. 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963); United States v. Gaitan, 189 F.Supp. 674 (D.Colo.1960), aff'd 295 F.2d 277 (10th Cir. 1961), cert. den. 369 U.S. 857, 82 S.Ct. 939, 8 L. Ed.2d 15 (1962); United States v. Gandia, 255 F.2d 454 (2d Cir. 1958); Warring v. Colpoys, 74 App.D.C. 303, 122 F. 2d 642, 136 A.L.R. 1025 (1941) (Vinson, J.), cert. den. 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543 (1941); cf., Sunal v. Large, 332 U.S. 174, 181–184, 67 S.Ct. 1588, 91 L.Ed. 1982 (1946). We acknowledge that several of the above-cited cases deal with rulings entered at trial which were later affected by changes in the applicable law; however, this Court can see no significant distinction from a case such as this where a plea of guilty was entered based upon the prevailing, but later modified, construction of a statute. We are even more compelled to this result where, as here, the modification or decisional change has been recognized in only three Circuits—Third, Eighth, and Ninth—and where, as here, such a decisional change has not yet been forthcoming from either the Seventh Circuit Court of Appeals or the United States Supreme Court.

Finally, we make the observation that, even should this Court conform to the Donovan line of cases and hold that "the gun must be loaded" under Section 2113 (d), the ultimate effect would not be to reduce the present term of imprisonment that this petitioner now serves. This is so for the reason that, as already mentioned, of the six separate informations filed against petitioner, one of those six—South Bend Criminal No. 2003—charged violation of Section 2113 (d) by alleging petitioner did *"assault certain persons* and put in jeopardy the lives of certain persons in said bank by the use of a dangerous weapon and device * * *"* (Emphasis added.) Petitioner's plea of guilty to this charge, upon which he was sentenced to a term in prison of twenty-five years and fined $10,000, cannot be attacked on the grounds here discussed. Petitioner, at the time his plea of guilty was entered, was under no misapprehension as to the meaning of "assault" as it appears in Section 2113(d), and he does not so allege in this petition. Furthermore, to the knowledge of this Court, the meaning of that term has undergone no modification or refinement since 1954 in the manner which the phrase "putting a life in jeopardy" apparently has.

There is no doubt that this petitioner's plea of guilty to the charge of "assault" pursuant to Section 2113(d), without more, is sufficient to sustain his conviction and the sentence rendered thereunder. Bram v. United States, supra (d). The phraseology used in the information in South Bend Criminal No. 2003 is the proper and preferred form, for it is well settled that if within a statute several distinct methods of committing a single offense are specified in the disjunctive, it is not duplicitous to combine in one count of an indictment or information two or more methods in the conjunctive. United States v. Selage, 175 F.Supp. 439 (W.D.S.D.1959); Colony, Inc. v. Commissioner of Internal Revenue, 244 F.2d 75 (6th Cir. 1957); Smith v. United States, 234 F.2d 385 (5th Cir. 1956). To plead several methods in the disjunctive has in fact been held error. Heflin v. United States, 223 F.2d 371 (5th Cir. 1955); Price v. United States, 150 F.2d 283 (5th Cir. 1945), cert. den. 326 U.S. 789, 66 S.Ct. 473, 90 L.Ed. 479 (1945), reh. den. 327 U.S. 813, 66 S.Ct. 519, 90 L.Ed. 1038 (1946). The general rule on this subject is well-stated at 42 C.J.S. Indictments & Informations, § 101, pp. 984–985:

"As a general rule, where a statute specifies several means or ways in which an offense may be commit-

ted in the alternative, it is bad pleading to allege such means or ways in the alternative; the proper way is to connect the various allegations in the accusing pleading with the conjunctive term 'and' and not with the word 'or'."

Finally, the courts are generally agreed that where several methods are charged conjunctively, only one method need be proved to find a defendant guilty of the was forced to litigate in state court. F.2d 628 (10th Cir. 1938) (citing additional authority); and see other cases cited immediately above.

Therefore, and for the reasons set forth above, this third contention of petitioner must fail.

### III.

At this time, and with regard to this petitioner, we take special note of the provision of Section 2255 which states: "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." As indicated in Part I of this Memorandum, this is petitioner's fourth successive Section 2255 motion before this, the sentencing Court. In ruling on the respective motions, we have adjudicated the merits of at least eight distinct contentions of supposed constitutional import. Upon denial of the motions, we have also entertained several motions for rehearing. At least twice petitioner appealed from our decisions to the Seventh Circuit Court of Appeals, and on two occasions petitions for Writ of Certiorari have been filed in the United States Supreme Court.

This Court has never, and it does not now, intend to unreasonably delimit or restrict the full and proper operation of Section 2255, nor is it our purpose to unfairly constrain this or any other petitioner from legitimately taking advantage of the remedies made available thereunder. However, we are of the considered opinion that this petitioner has well-nigh "exhausted" the remedy and that any further such motions under Sec-

tion 2255 in the future cannot but constitute abuse.

While the power to consider successive motions for similar relief is not precluded by operation of the doctrine of *res judicata,* Turner v. United States, 206 F.Supp. 261 (D.Mo.1962), the decision to do or not to do so is left to the "sound judicial discretion" of the sentencing court. Gant v. United States, 308 F.2d 728 (5th Cir. 1962). Furthermore, where there has been a previous Section 2255 motion, the District Judge has discretion to deny relief as to those allegations which could have been, but were not, raised in the earlier proceeding, unless petitioner was unaware of the significance of the relevant facts. Williams v. United States, 197 F.Supp. 198 (D.Ore. 1961); Turner v. United States, 103 U.S.App.D.C. 313, 258 F.2d 165 (1958); Moore v. United States, 108 U.S.App.D.C. 14, 278 F.2d 459 (1960); Dunn v. United States, 234 F.2d 219 (6th Cir. 1956), cert. den. 352 U.S. 899, 77 S.Ct. 140, 1 L.Ed.2d 90 (1956). Finally, there is no question but that the District Court may summarily deny successive petitions where abuse is obvious and flagrant, for "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or entertain collateral proceedings whose only purpose is to vex, harass, or delay." Haith v. United States, 330 F.2d 198, 199 (3rd Cir. 1964), on remand 231 F.Supp. 495 (E.D.Pa. 1964).

Therefore, out of fairness to this petitioner, we are compelled to state at this time that any future petitions "for similar relief" under Section 2255 filed in his behalf will be considered and construed in light of petitioner's already voluminous file in this Court. Hereafter, unless petitioner can make a convincing showing that he "was unaware of the significance of the relevant facts," grounds presented in future motions will be deemed previously waived. The time has come when this petitioner has had his full day in federal court.

## IV.

For the reasons hereinabove indicated, it is clear that petitioner's Motion for Vacation and Correction of Sentence is without basis in fact and in law, and should be denied.