**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Darrell James BROWN, Defendant-Appellant.**

**No. 23156.**

United States Court of Appeals
Ninth Circuit.

June 27, 1969.

Rehearing Denied Aug. 15, 1969.

Darrell J. Brown, pro se.

Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Howard B. Frank, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge:

 Appellant in propria persona takes this appeal from a district court decision denying relief in a collateral proceeding, designated as a "Motion to Vacate Sentence or for a Writ of Coram Nobis." Appellant has mislabeled his petition. He is not entitled to relief under Federal Rule of Criminal Procedure 35 because his sentence is not itself illegal. Hill v. United States, 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Coram Nobis is not available, since he is still in custody. Cf. Fed.R.Civ.P. 60(b). Hence, we treat the petition filed below as a motion under 28 U.S.C. § 2255. It was denied in the district court, and we affirm.

We quote from the order of the district court judge (Judge Ferguson):

"On March 7, 1951, petitioner was indicted with three other codefendants for violation of 18 U.S.C. § 2114—Robbery from Mails.[1] This indictment alleged that on January 16, 1951, in Los Angeles County, the four defendants robbed the Postmaster at Pacoima, California, of $2,085.26 and in effecting the robbery put in jeopardy the life of the Postmaster by the use of a .32 caliber revolver.

"On March 12, 1951, the petitioner was arraigned on the charge by the late Judge William C. Mathes. Plaintiff requested the appointment of an attorney, and George H. Pratt, Esq., was appointed by Judge Mathes.

"Judge Mathes continued the arraignment of the petitioner until March 14, 1951, for the purpose of entering a plea.

"On March 14, 1951, the petitioner pleaded guilty. Before accepting the plea, Judge Mathes read the indictment, and the provisions of 18 U.S.C. § 2114. A discussion ensued whether or not a mandatory twenty-five years was required. Judge Mathes was most positive that he would not accept a plea until petitioner was fully advised. The matter was then put over to later in the day to provide more consultation between the petitioner and his attorney.

"When the cause was subsequently called again, the petitioner again pleaded guilty. Judge Mathes carefully questioned the petitioner to determine whether or not his plea was intentionally and voluntarily made with complete awareness of the consequences of the plea. Judge Mathes states 'Of course, you understand that upon giving this plea of guilty you have no hope of leniency? The law compels the Court to mete out the punishment of a twenty-five year prison sentence. Do each of you understand that?' The petitioner replied that he did.

"Judge Mathes accepted the guilty plea and sentenced the petitioner to the mandatory twenty-five years.

1. (not in Judge Ferguson's order) 18 U.S.C. § 2114. *Mail, money or other property of United States.* Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money or other property of the United States, or robs any such person of mail matter, or of any money, or other prop- erty of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.

"On September 21, 1967, the petitioner, in proceeding number 67–1389–FW, filed in this court a motion pursuant to 28 U.S.C. § 2255, contending that Judge Mathes did not comply with Rule 11 of the Federal Rules of Civil [Sic] Procedure prior to accepting the plea of guilty.

"The motion was heard by Judge Frances C. Whelan of this court, and on January 18, 1968, he filed his Memorandum Decision and Order denying the 2255 motion. Judge Whelan decided that the plea was voluntary, was made with understanding of its consequences and the petitioner did not have an erroneous belief in regard to the mandatory sentence.[2]

"There was no appeal from Judge Whelan's Order and it is binding in this proceeding. In addition, however, an independent review of the record requires this court to conclude the same as did Judge Whelan.

"The petitioner in this proceeding now claims that the sentence of Judge Mathes was illegal. The sentence was legal. A reading of 18 U.S.C. § 2114 is clear that under the wording of the indictment by which petitioner was charged 'life in jeopardy by the use of a dangerous weapon' requires a mandatory imprisonment of twenty-five years. Judge Mathes was not in error.

"In regard to petitioner's claim that he was in error in not understanding that Judge Mathes was required to impose a mandatory twenty-five year sentence, the record and Judge Whelan's decision in the 2255 motion lay to rest the claim. The petitioner in his argument attached to his complaint concedes that Judge Mathes was extremely cautious in accepting the guilty plea. There is no question that the petitioner knew that the sentence of twenty-five years was mandatory." C.T. 28–30.

Our own examination of the transcript of the proceedings had before the sentencing judge shows that most of appellant's contentions are completely frivolous.

After the filing of appellant's opening brief, the Government's brief, and appellant's reply, appellant sought from this court, and received, permission to file a supplemental pleading. We have considered the cases cited therein, and find nothing therein to cause us to come to any conclusion other than to affirm the sentence, based as it was upon a clearly uncoerced plea of guilty, made with a full understanding on appellant's part of the consequences of such plea.

Appellant's reliance upon McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), relating to compliance with Federal Rule of Criminal Procedure 11, is misplaced, for it was held not to be retroactive in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

We put aside the question of whether or not a person's life can be put into jeopardy by the use of a dangerous weapon, to wit, a .32 revolver, whether loaded or unloaded. Many a gun has been used as a dangerous weapon without its being fired.

Appellant raises the question as to whether or not the gun used in the hold-up could be fired; and if not, had he placed the Postmaster's life in jeopardy.

This point was raised in mitigation of punishment prior to sentence. The trial judge immediately invited the appellant, with his codefendants, to consider the possibility of pleading guilty "to a portion of this charge. They might deny putting the life in jeopardy. * * *" (C.T. 39.) Two of the codefendants asked for further delay, and obtained it, but appellant asked for, and received an immediate sentence. *cf.* Wagner v. United States, 264 F.2d 524 (9th Cir. 1959); LaClair v. United States, 241 F. Supp. 819, 828 (N.D.Ind.1965), and cases cited.

---

2. (not in Judge Ferguson's order) Judge Whelan stated in this regard: "It appears, therefore, that there is no basis whatsoever for petitioner's motion and petition." C.T. 26.

Smith v. United States, 309 F.2d 165 (9th Cir. 1962), is not similar on its facts. There the petitioner was unrepresented by counsel at his trial, and misadvised by Government counsel. Compare, Alexander v. United States, 290 F. 2d 252 (5th Cir. 1961).

Affirmed.

DUNIWAY, Circuit Judge:

I dissent. Most of Brown's contentions are clearly without merit, as my brother Barnes' opinion demonstrates. But there is one as to which Brown should be permitted to amend, and, if he can allege sufficient facts, to have a hearing. That is his claim that he did not put the life of the person robbed in jeopardy by the use of a dangerous weapon. Unless he did that, he is not guilty of the aggravated offense of which he was convicted, and he has already served six years more than the ten-year maximum prescribed for the lesser offense of which he is admittedly guilty. Thus this is one of those rare cases in which it appears that the petitioner may not be guilty, rather than that there was some defect in the proceedings that may require a new trial even though he be guilty. When such a claim is advanced, I think that it should not be summarily disposed of, without a hearing, unless the record does indeed *"conclusively* show that the prisoner is entitled to no relief." (28 U.S.C. § 2255; emphasis added). Here, I do not find the record conclusive.

Brown asserts that he did not have an "intelligent understanding" because:

"(a) The evidence in this case showed only a violation of the simple offense of robbery by force and not the aggravated offense of putting life in danger, or, assault.

(b) Defendant on March 14, 1951, entered a plea of guilty with a misunderstanding of the nature of the offense founded on the erroneous definition given the defendants and the Court by counsel for the Government."

No facts whatever are stated in support of these allegations. Moreover, the transcript of the sentencing hearing shows that the court inquired whether defendants, including Brown, understood that they could plead "partially guilty to a portion of this charge? They might deny putting the life in jeopardy by the POWER [sic] of a dangerous weapon." Nevertheless, Brown stood on his plea, fully understanding that it required the court to impose a 25-year sentence. And the transcript contains nothing indicating that government counsel gave the court any definition of the charge. If this were all, I would be disposed to affirm.

But there is more. The court's inquiry that I have just quoted occurred at the time of sentencing, the plea having been taken a few days before. It was prompted by the following colloquy between the court and Brown's counsel:

"MR. PRATT: If your Honor please, there isn't any legal ground why sentence should not be pronounced but I would like to call your Honor's [sic] to the fact that the indictment charges that they assaulted the postmistress, which is technically true, but they didn't actually do any physical violence to her; the assault was wholly by means of a revolver WHICH COULD NOT BE FIRED (?)

THE COURT: There is no question but what they are pleading guilty to the charge, is there?

MR. PRATT: No, there isn't, your Honor. I just wanted to call your Honor's attention to the fact put the charge 'assault,' that there wasn't any language 'physical assault.'

THE COURT: That wouldn't affect the situation any, would it?

MR. PRATT: No, I don't think it would.

THE COURT: They are pleading guilty to the charge of putting her life in jeopardy by the USE of a dangerous weapon.

MR. PRATT: Yes, that is right, your Honor.

THE COURT: And that is the portion of the charge which makes man-

datory a 25 year sentence of imprisonment.

MR. PRATT: I understand that. They do, too, your Honor."

The transcript was written up from the reporter's notes, apparently by someone else, and may well not be entirely accurate. The capitalized language and question mark indicate doubt on the part of the person writing up the transcript. Nevertheless, this colloquy does indicate to me that there may have been confusion in the minds of all parties as to the meaning of the phrase "puts his life in jeopardy by the use of a dangerous weapon."

As is shown in the careful opinion in LaClair v. United States, N.D. Ind., 1965, 241 F.Supp. 819, 824–826, the law as to its meaning was in a state of some confusion in 1951, when Brown pleaded guilty. The trial judge's comment "That wouldn't affect the situation any, would it?" can be read as meaning that "an objective state of danger" is not required. Yet since 1951, it has become settled in this and other circuits that an objective state of danger must exist. Wagner v. United States, 9 Cir., 1959, 264 F.2d 524, 530; United States v. Donovan, 2 Cir., 1957, 242 F.2d 61, 63; Dorrough v. United States, 5 Cir., 1967, 385 F.2d 887, 893–894; Smith v. United States, 5 Cir., 1960, 284 F.2d 789, 791–792. See also the following cases construing similar language in 18 U.S.C. § 2113(d), dealing with bank robbery: Wilcox v. United States, 9 Cir., 1967, 381 F.2d 450, 451; Smith v. United States, 9 Cir., 1962, 309 F.2d 164; United States v. Roach, 3 Cir., 1963, 321 F.2d 1, 5; Meyers v. United States, 5 Cir., 1941, 116 F.2d 601, 603 (predecessor section 588b(b) (a)); Wheeler v. United States, 8 Cir., 1963, 317 F.2d 615, 618.

If in fact the gun could not be fired, either because it was not loaded or for some other reason, and if in fact it was not used in such a manner, even though it could not be fired, as to put the life of the postmistress in an objective state of danger, then Brown is not guilty of the aggravated offense.

I would vacate the order and remand with directions to the trial court (1) to permit Brown to allege, in detail and under oath, so that he would be subject to the penalties of perjury, exactly what happened at the robbery, so far as use of the gun is concerned, and, (2) if such allegations are sufficient, to hold a hearing and grant such relief, if any, as may be proper. Naturally, I express no opinion as to the veracity of Brown's claims.