## UNITED STATES v. REEVES.

### (*Circuit Court, W. D. Texas.* February 18, 1889.)

1. POST-OFFICE—ROBBERY OF MAIL CARRIER—WHAT CONSTITUTES OFFENSE.
   Under the United States statute punishing "any person who shall rob any carrier, agent, or other person intrusted with the mail," the offense is committed where it is shown that the mail, or any part thereof, is taken violently from the possession of the carrier, against his will, by violence, or putting him in fear.

2. SAME—JEOPARDIZING LIFE.
   To constitute the crime of robbery by putting in jeopardy the life of the person having the custody of the mail, by the use of dangerous weapons within the meaning of the statute, it is sufficient if the acts of the offenders, created in the mind of the person having the mail in his custody a well-grounded apprehension of danger to his life in case of resistance or refusal to give up the mail.

3. SAME—DANGEROUS WEAPON.
   A "dangerous weapon," within the meaning of that provision, is one likely to produce death or great bodily harm.

4. SAME—WHO ARE PRINCIPALS.
   If the accused was present on the occasion of the robbery, aiding, advising, and procuring its commission, it becomes immaterial whether he actually entered the car containing the mail or not, as he is to be regarded as a principal, and convicted as such.

5. SAME—ATTEMPT.
   Under the statute punishing an "attempt to rob the mail by assaulting the person having the custody thereof," the attempt means an endeavor to accomplish it, carried beyond mere preparation, but falling short of the ultimate design. The attempt must also be to rob the mail, and not merely an attempt to rob the express car, or the passengers on the train carrying such mail.

**6. SAME—ASSAULT.**

To constitute the assault it is not necessary that serious bodily injury should be inflicted. Drawing a gun, with a threat to use it, or forcibly ejecting the person in possession of the mails from the mail-car, is sufficient.

**7. CRIMINAL LAW—ACCOMPLICE—CREDIBILITY AS WITNESS.**

The credibility of an accomplice is for the jury, and, though they are to be advised not to regard his evidence unless confirmed in some part, yet they are not limited in believing him only to the parts confirmed. They are the judges as to how far they will believe him, from the confirmation he receives from other evidence, the nature, probability, and consistency of his story, his manner of telling it, and such other circumstances as impress the mind with its truth.

Indictment against Ed Reeves for Robbery of the Mail.

*Rudolph Kleberg*, U. S. Dist. Atty., and *T. H. Franklin*, for the Government.

*F. G. Morris* and *Fiset & Miller*, for defendant.

MAXEY, J., (*charging jury.*) The indictment preferred against the defendant in this case contains three counts. The first of those counts has been dismissed by the district attorney, and only the second and third remain for our consideration. The offenses charged in the second and third counts are separate and distinct, and each is punishable as an independent offense under the laws of the United States. In charging you as to the law by which you should be governed in reaching a conclusion, touching the guilt or innocence of the defendant, I will first direct your attention to the third count of the indictment, as by adopting that order in presenting the case you may the more readily understand the exact nature and meaning of the offense charged in the second count. It is also important to remind you that Ed Reeves is the only defendant now upon trial, and it is your sole duty to say by your verdict whether he is guilty or innocent of the crimes charged against him. With these observations, we will proceed to the third count of the indictment.

*The Third Count.* It is charged in the third count that, on the 18th day of June, 1887, in Fayette county, Tex., the defendant, Ed Reeves, and John Barber, Bud Powell, Will Whitley, Ike Cloud, and Charley Ross, unlawfully made an assault upon one T. B. Hart, "he, the said T. B. Hart, being then and there a person intrusted with the mail of the United States of America, and the life of him, the said T. B. Hart, in jeopardy did put by the use then and there of dangerous weapons, and did feloniously, violently, and forcibly, take, steal, and carry away from the possession of the said T. B. Hart certain of said mail then and there intrusted to him, the said T. B. Hart, and then and there in his said possession." So much of the statute, upon which the third count is predicated, as may be necessary for you to consider, is expressed in the following words:

"Any person who shall rob any carrier, agent, or other person intrusted with the mail, of such mail, or any part thereof, shall be punishable by imprisonment at hard labor for not less than five years, and not more than ten years; * * * if, in effecting such robbery the first time, the robber shall wound the person having custody of the mail, or put his life in jeopardy by

the use of dangerous weapons, such offender shall be punishable by imprisonment at hard labor for the term of his natural life." Rev. St. U. S. § 5472.

The offense consists in robbing the carrier, agent, or other person intrusted with the mail, of the mail, or any part thereof; and the question of law first to be considered is, what is a robbing of the carrier of the mail? The act of congress makes use of the word "rob," without defining it; but it is a word which, long before the act of congress, had received a settled construction by the common law. And, as understood at common law, "robbery is the felonious and forcible taking of the property of another from his person, or in his possession, against his will, by violence, or putting him in fear." 2 Whart. Crim. Law, § 1695. It is not necessary, in a case like the present, that the mail should have belonged to the carrier, for it is not his property. He is simply charged with its custody and preservation until it passes beyond his control and possession in the performance of his official duty. The law is satisfied upon this point when it is shown that the mail, or any part thereof, is unlawfully taken from the possession of the carrier, against his will by violence, or putting him in fear. You observe that by this law there are two species of robbery: (1) A robbery of the mail under such circumstances as amount to the offense by the principles of the common law; (2) a robbery effected by putting in jeopardy the life of the person having the custody of the mail, by the use of dangerous weapons. The court has already charged you as to the meaning of the first. To constitute the second, "three things must concur: the mail must be robbed, it must be effected by putting in jeopardy the life of the person who has it in custody, and this must be done with dangerous weapons." *U. S.* v. *Wilson,* Baldw. 93. If you find from the testimony that the robbery charged was committed on the 18th day of June, 1887, in Fayette county, the question then arises, was the life of the carrier put in jeopardy? "Jeopardy" has been held to mean danger, peril, reasonable fear, and well-grounded apprehension. The testimony of the mail messenger, Hart, who was intrusted with the mail at the time stated, is before you. He explained to you how an entrance into the car was effected; how one of the intruders compelled the express messenger to open his safe, and how he was required by one of the men, who forced their way into the car, to open the mail-bag and deliver the mail. If, from the testimony, you believe that a robbery of the mail was committed at the time and place mentioned in the third count of the indictment, and that in effecting it the offenders or robbers did such acts as created in the mind of the mail messenger a well-grounded apprehension of danger to his life in case of resistance or refusing to give up the mail; if his life was actually in danger, or he really believed it to be so,—then the robbery was committed by putting his life in jeopardy. *U. S.* v. *Wilson, supra.* You will next inquire whether the robbery and putting in jeopardy the life of the mail messenger (if such be the facts) were done with dangerous weapons. A dangerous weapon is one likely to produce death or great bodily harm; and if you believe from the testimony that the life of the mail messenger was put in jeopardy by the use of a weapon likely to

produce death or great bodily harm, then you are charged that the use of such a weapon is the use of a dangerous weapon. *U. S.* v. *Williams*, 6 Sawy. 244–247, 2 Fed. Rep. 61; *Skidmore* v. *State*, 43 Tex. 96–97.

The next question, and one of supreme importance, is, did the defendant commit the offense as charged in the third count of the indictment, and as above explained to you in this charge? The testimony, without dispute or contradiction, clearly shows that during the night, on the 18th day of June, 1887, a railway train was stopped by armed men near the town of Flatonia, Fayette county, and that the men by force effected an entrance into the mail-car, compelled the mail messenger to cut open the mail-bag, and that they took from the bag a part of the mail. Counsel for the government maintain that the robbery was committed by the defendant, Barber, Powell, and other persons named in the indictment. It is for you, gentlemen, to determine, from a consideration of all the testimony submitted to you, whether the defendant was one of the parties to the robbery; that is to say, whether he was present on the occasion of the robbery, consenting, aiding, procuring, advising, or assisting the commission of the crime. If he was so present, consenting, aiding, procuring, advising, or assisting the commission of the offense,—if any offense was committed,—he is regarded in law as a principal offender, and may be indicted and convicted as such. "A crime may consist of many acts, which must all be committed in order to complete the offense; but each person present, consenting to the commission of the offense, and doing any one act which is either an ingredient of the crime or immediately connected with or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense." Hence, if you find that the robbery was committed at the time and place and under the circumstances stated in the third count, and that the defendant was present, aiding, encouraging, advising, and procuring its commission, it would become immaterial whether he actually entered the mail-car or not, for he would be equally guilty with the man who forced his way therein, and compelled the messenger to open the mail-bag. Upon this branch of the case you must determine (1) whether robbery of the mail was committed at the time and place charged; (2) if so, was it effected by putting in jeopardy the life of the messenger by the use of dangerous weapons; and (3) is the defendant one of the parties who thus committed the offense,—if offense was committed? If, from examination and consideration of all the testimony in the case, you answer each of those three questions in the affirmative, it will be your duty to find the defendant guilty as charged in the third count of the indictment. If, on the other hand, you believe from the testimony, taken in connection with the foregoing charge, that the defendant is guilty of robbery of the mail at the time and place stated in the third count of the indictment, but that the robbery was not effected by putting the life of the messenger in jeopardy by the use of dangerous weapons, then your verdict under that count will be as follows: "We, the jury, find the defendant guilty of robbery of the mail as charged in the third count of the indictment; and we further find that the robbery was not effected by

putting the life of the messenger in jeopardy by the use of dangerous weapons." The court now directs your attention to the second count of the indictment.

*The Second Count.* It is charged in the second count of the indictment that on the 18th day of May, 1887, in Travis county, Tex., the defendant, Ed Reeves, John Barber, Bud Powell, Will Whitley, Ike Cloud, and Charley Ross made an assault upon S. R. Spaulding, "he, the said Spaulding, being then and there a person intrusted with the mail of the United States of America, and by said assault did attempt to violently, feloniously, and forcibly take, steal, and carry away from the possession of the said Spaulding the said mail then and there intrusted to him * * * and in his said possession." This count of the indictment is based upon the following section of the statute:

"Any person who shall attempt to rob the mail by assaulting the person having custody thereof, shooting at him or his horse, or threatening him with dangerous weapons, and shall not effect such robbery, shall be punishable by imprisonment at hard labor for not less than two years, and not more than ten years." Rev. St. U. S. § 5473.

In a foregoing part of this charge I have endeavored to explain to you the meaning of the terms "robbery" and "dangerous weapons," and it is unnecessary to repeat here what was there said. The offense charged in this count of the indictment is an attempt to rob the mail, and to constitute it there must concur (1) an attempt; (2) the attempt must be to rob the mail; (3) the attempt must be accompanied by an assault upon the person having custody of the mail, or shooting at him or his horse, or threatening him with dangerous weapons.

1. To "attempt" is to make an effort to effect some object; to try; to endeavor; to use exertion for some purpose. And "an attempt to commit a crime" is defined to be an endeavor to accomplish it, carried beyond mere preparation, but falling short of the ultimate design in any part of it. *Lovett* v. *State*, 19 Tex. 176, 177.

2. It must appear that the endeavor or effort was made to rob the mail; that is, to try or attempt unlawfully and by force to take the mail from the person having the custody of it, against his will. The attempt must be to rob the mail, not the express car alone, nor the passengers on the train; for robbery of the express car or of passengers, or attempt to commit the same, would be offenses of which this court has no jurisdiction. These offenses are punishable by the laws of the state, and not by the federal statutes. To constitute the offense, therefore, as charged in the second count, the testimony must show that an attempt was made to rob the mail.

3. The attempt to rob the mail must be by assaulting the person having custody of it, or shooting at him or his horse, or threatening him with dangerous weapons. "Assault" is defined to be "an unlawful offer or attempt with force or violence to do a corporal hurt to another," (1 Bouv. Law Dict. 152;) or, as said by Mr. Wharton, "an assault is an intentional attempt, by violence, to do an injury to another," (2 Whart. Crim. Law, § 1241.) To constitute an assault it is not necessary that serious

bodily injury is inflicted upon the person assaulted. The drawing of a gun or pistol on another, with threat to use it, is an assault; or the forcible ejection by an unauthorized person, without provocation, from a mail-car, of a person intrusted with the mail, would be an assault. And so, too, in the language of the statute, if the person who attempts to rob the mail shoots at the person having custody of the mail, or threatens him with dangerous weapons,—that is to say, with weapons the use of which would likely produce death or serious bodily harm,—the offense is complete.

Apply the above rules of law, gentlemen of the jury, to the facts of this case, and ascertain from all the testimony in the cause (1) whether the offense as charged in the second count of the indictment was committed as therein alleged; and (2) whether the defendant committed said offense actually, in person, or whether he was present at the time of its commission, (if committed at all,) aiding, assisting, advising, and procuring its commission. It is charged in the count now under consideration, as well as in the third count, that the crime was committed by the defendant, John Barber, and other persons therein specifically named. The fact is not disputed, and is clearly shown by the testimony, that at the time stated in the second count a railway train was boarded and detained near McNeill Station, Travis county, by several armed men, and it is claimed by the district attorney that the defendant was present and participated in the alleged attempt to rob the mail on that train. You must judge for yourselves, from a careful examination of the testimony, whether he was present at the time, and whether he and the other persons there present actually committed the offense. If you believe from the testimony that the offense as charged in the second count was committed at the time and in the manner stated therein, and that the defendant was present at the time, aiding, assisting, procuring, or advising in its commission, then it would be your duty to find him guilty as charged in the second count of the indictment; for although he may not have made the assault himself, or shot at the person intrusted with the mail, or threatened him with dangerous weapons, he would, under such circumstances, be equally guilty with his confederates who perpetrated the act.

It is my duty to call your attention to the testimony of certain witnesses,—Bennett and Harrell,—and advise you as to how it should be received and treated by you when you come to consider of your verdict. It is said that the two witnesses named are accomplices in the crimes charged against defendant, and that therefore their testimony is unworthy of credit. The witnesses themselves stated upon the stand that indictments were preferred against them, but subsequently dismissed. Referring to the weight to be attached to the testimony of accomplices, the rule appears to be this:

"Whilst it would be unsafe, in ordinary cases, to convict any one upon the uncorroborated testimony of accomplices in the crime, the rule of law undoubtedly is that they are competent witnesses, and it is your duty to consider their evidence. You are to weigh it, and scrutinize it with great care. You

are to test its truth by inquiring into the probable motive which prompted it." *U. S.* v. *Sacia*, 2 Fed Rep. 758.

And further, employing the language of a learned judge:

"It is certainly true that, when a witness is admitted to be competent, his credibility rests entirely with the jury, who may therefore convict upon the testimony of an accomplice, though unsupported by any other proof; and, if they conscientiously believe him, it is their duty to do so. This, however, is seldom the case; and it is usual for the court to advise a jury not to regard the evidence of an accomplice unless he is confirmed in some parts of his evidence by unimpeachable testimony. But you are not to understand by this that he is to be believed only in such parts as are thus confirmed, which would be virtually to exclude him, inasmuch as the confirmatory evidence proves of itself those parts it applies to. If he is confirmed in material parts, he may be credited in others; and the jury will decide how far they will believe a witness from the confirmation he receives by other evidence; from the nature, probability, and consistency of his story, from his manner of delivering it, and the ordinary circumstances which impress the mind with its truth." *U. S.* v. *Kessler*, Baldw. 22.

With the rules above announced for your guidance, gentlemen, you will give to the testimony of Bennett and Harrell such weight as you consider it entitled to receive.

Certain statements, purporting to be the verbal confessions of the defendant, have been admitted in evidence before you, and upon the subject of such confessions, as a part of this charge, I will read to you from Mr. Greenleaf's work on Evidence, as follows:

"The evidence of verbal confessions of guilt is to be received with great caution; for, besides the danger of mistake from the misapprehension of witnesses, the misuse of words, the failure of the party to express his own meaning, and the infirmity of memory, it should be recollected that the mind of the prisoner himself is oppressed by the calamity of the situation, and that he is often influenced by motives of hope or fear to make an untrue confession. The zeal, too, which so generally prevails, to detect offenders, especially in cases of aggravated guilt, and the strong disposition in the persons engaged in pursuit of evidence to rely on slight grounds of suspicion, which are exaggerated into sufficient proof, * * * all tend to impair the value of this kind of evidence, and sometimes lead to its rejection, when, in civil actions it would have been received." 1 Greenl. Ev. §§ 214, 215.

"Subject to the cautions" just stated, "in receiving them and weighing them, it is generally agreed that deliberate confessions of guilt are among the most effectual proofs in the law. Their value depends on the supposition that they are deliberate and voluntary, and on the presumption that a rational being will not make admissions prejudicial to his interest and safety, unless when urged by the promptings of truth and conscience." *U. S.* v. *Montgomery*, 3 Sawy. 552. Tested by these rules, you will calmly weigh the confessions of the defendant, and judge of their truth accordingly. You are instructed that the law presumes a man innocent until he is proven guilty; and "you are further instructed that you cannot find the defendant guilty, unless from all the evidence you believe him guilty beyond a reasonable doubt. * * * A reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence; and if, after an impartial comparison and con-

sideration of all the evidence, you can confidently say that you are not satisfied of the defendant's guilt, you have a reasonable doubt. But if, after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonble doubt."

As I have before informed you, but two counts remain in the indictment,—the second and third. Where an indictment contains two counts, the jury may convict under both, or acquit as to both, or, they may acquit as to one count and convict as to the other. If you should find the defendant guilty as charged in both counts, your verdict will be: "We, the jury, find the defendant guilty as charged in the second and third counts of the indictment." If you find him not guilty as to both counts, you will simply say: "We, the jury, find the defendant not guilty." If you find him guilty under one count, and not guilty as to the other, you will so say by your verdict, and distinguish under what count he is guilty, and what count not guilty. In preparing your verdict, remember the instructions of the court referring to your finding under the third count of the indictment, and found on a former page of the charge, and frame your verdict accordingly. It is useless, gentlemen, for me to say to you that this case is one of great importance, both to the government and the defendant, and I therefore admonish you to scrutinize, and weigh with deliberation, the testimony before you, and a true verdict render, according to the law and the evidence.