**UNITED STATES of America, Appellee,**

v.

**Robert L. DONOVAN, Albert Andrews and Hyman Cohen, Appellants.**

**No. 239, Docket 24421.**

United States Court of Appeals Second Circuit.

Argued Jan. 16, 1957.

Decided March 6, 1957.

---

Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City (Adelbert C. Matthews, Jr., David Jaffe and Maurice N. Nessen, Asst. U. S. Attys., New York City, of counsel), for appellee.

Jacob W. Friedman and Frank E. Healy, New York City, for appellants.

Before MEDINA and HINCKS, Circuit Judges, and LEIBELL, District Judge.

MEDINA, Circuit Judge.

Appellants were indicted on three counts. The first charged an assault upon a postal employee with intent to rob the mail. The second charged the same offense in aggravated form, alleging that appellants put the postal employee's life in jeopardy by using a dangerous weapon while attempting to rob the mail. These counts were based on 18 U.S.C. § 2114. The third count charged that appellants conspired to assault the postal employee with intent to rob him of mail matter in violation of the general conspiracy statute, 18 U.S.C. § 371. The jury returned a verdict of guilty on each count,

and the District Judge sentenced each appellant to imprisonment for twenty-five years on the second count and, concurrently, for five years on the third count; but he imposed no sentence on the first count.

No detailed statement of the facts is necessary. Suffice it to say that each of the appellants played his separate role in a scheme which culminated in an attempt to rob United States mail truck No. 2206 after it left the Greenwich Village Station Post Office on September 10, 1954. As the mail truck stopped at a red light defendant Donovan, dressed as a mail carrier, opened the door of the truck, sat down and held a loaded revolver against the side of the driver. Before he could accomplish his purpose detectives were upon him and he was apprehended.

Eleven "grounds of appeal" are listed in the appellants' brief. While we have examined each with the care due litigants whose personal liberty is at stake, we have concluded that all but two are so wholly without merit as not to require discussion. The two we shall discuss are: (1) that the trial judge improperly charged the jury as to the meaning of "jeopardy" as used in 18 U.S.C. § 2114; and (2) that it was error to rule that he lacked power to suspend sentence on the second count.

I

Section 2114 provides:

"Whoever assaults any person having * * * custody of any mail matter * * * of the United States, with intent to rob, steal, or purloin such mail matter * * * or robs any such person of mail matter * * * shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail * * * or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned for twenty-five years."

■ The District Court charged the jury that the statutory phrase "puts his life in jeopardy" means "that [the postal employee] must have been put in fear of being killed or in danger of being killed. It is not a question of whether the defendants planned to kill him or intended to kill him," the Court continued. "It is a question of whether he was put in fear or danger of being killed * * *." It was enough to convict under these instructions if the jury believed that the postal employee was put in fear of being killed, even though the jury also should determine that the employee's life was actually not in danger.

The ordinary dictionary definition of "jeopardy," however, suggests a different meaning. That term is commonly defined as referring to an objective state of danger, not to a subjective feeling of fear.[1] Doubtless, dictionary meanings are not always infallible guides, but that meaning is the one that best fits the phrasing of this statute. "Jeopardy" appears in the phrase "puts his life in jeopardy." To construe that word as meaning "fear" would result in the phrase "puts his life in fear," which would indeed be a strange use of language. Persons are put in fear, lives are not; they are put in danger.

Moreover, this meaning is the most appropriate one in view of the two degrees of mail robbery defined in the statute. The Congress declared that one who assaults a postal employee with intent to rob the mails is punishable by a term of 10 years, but that the punishment should be 25 years if the employee's life was put in jeopardy by the use of a dangerous weapon. We think the Congress intended a significant difference between the assault punishable by 10 years' imprisonment and the assault punishable by 25 years' imprisonment. That difference, we believe, was meant to be, not whether the employee was put in fear, but whether his life was put in danger by the use of a dangerous weapon. Thus, the jury must find that an accused put a postal employee's life in danger before it may properly find him guilty of the aggravated crime defined in the latter part of Section 2114.

The earlier case law on this point is confusing. When the question first arose in 1818, the court held that "putting his life in jeopardy" meant "putting the mail carrier in fear and his life in peril or danger." United States v. Wood, 28 Fed.Cas. pages 755, 759, No. 16,757. Twelve years later the question arose again in United States v. Wilson, 28 Fed. Cas. page 699, No. 16,730. There the court explained to the jury that "jeopardy" meant "peril and danger," that "it is a question of danger, not of fear," and "that the subject of your inquiry is whether his life was put in peril." At the same time, the court also spoke of "a well grounded apprehension of danger to his life" and the postal carrier "really" believing that his life was in danger, language adopted in United States v. Reeves, C.C., 38 F. 404, and Madigan v. United States, 8 Cir., 23 F.2d 180.

There is no need to analyze and distinguish those earlier cases. The purpose of the statute and the ordinary meaning of "jeopardy" proceed *pari passu*, and we are satisfied that "jeopardy" means danger and not fear.

■ Despite all this we find no basis for reversal in the record now before us, since one of appellants' counsel submitted requests for instructions to the jury that the requirement of "jeopardy" was satisfied if the mail carrier was put in fear of his life as well as if he was put in actual danger. One charged with crime may not thus lay a trap for the trial judge and then seek a new trial because the trial judge fell into the trap.

---

[1] The Merriam-Webster New International Dictionary, 2d ed., gives this definition of "jeopardy": "Exposure to death, loss or injury; hazard; danger."

Almost identical is the definition in the Funk & Wagnalls New Standard Dictionary: "Exposure to death, loss, or injury; danger; hazard."

The Oxford Dictionary, Vol. 5, p. 568, gives this definition: "Risk of loss, harm, or death; peril, danger."

Moreover, on this record there appears to be no doubt of the actuality of the danger to the postal employee's life.

Accordingly, we affirm the judgments of conviction.

■ Judge Walsh properly refused to impose sentence on Count 1, which dealt with assault, as the appellants had also been found guilty of the aggravated form of this offense under Count 2. In the event of a finding of guilt of both the simple and the aggravated form of the offense defined by Section 2114 the statute does not authorize a double sentencing. Costner v. United States, 4 Cir., 139 F.2d 429; Brooks v. United States, 10 Cir., 223 F.2d 393.

There remains the interesting and novel question whether the statutory requirement of a sentence of 25 years imprisonment is absolutely mandatory, as held by the trial judge, or is subject to a suspension of sentence under the Federal Probation Act of 1925, 18 U.S.C. § 3651. The trial judge held the Probation Act inapplicable. In this we think he erred.

■ This Act authorizes the federal courts to suspend the imposition or execution of sentence for "any offense not punishable by death or life imprisonment." The broad sweep of this language indicates the dimensions of the decision made by the Congress when it instituted the federal probation system. It established a comprehensive plan that is clearly designed to apply unless explicitly made inapplicable by subsequent legislation.

■ Section 2114 is not such subsequent legislation. It was first enacted in 1799 and subsequently reenacted over the years with few changes. When it was reenacted in 1935 and in 1948, after the passage of the Federal Probation Act, the bearing of that Act on Section 2114 was not called to the attention of the Congress. Under these circumstances, we have concluded that the power to suspend sentence under the comprehensive plan of the Probation Act was not rendered unavailable here.

■ The trial judge was thus free to suspend sentence on Count 2. Had he been aware of this, we cannot say that he might not have chosen to impose the possibly inadequate sentence of five years on the conspiracy count and to suspend sentence on the other, rather than impose and not suspend the possibly excessive sentence of 25 years he thought mandatory. Appellants are entitled to an unfettered consideration of these alternatives, and the proper forum for such a determination is the District Court.

Judgments of conviction affirmed; case remanded for resentencing on Count 2.