**Jerry Mack DORROUGH, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 24017.

United States Court of Appeals
Fifth Circuit.

Sept. 15, 1967.

Goldberg, Circuit Judge, dissented.

888

W. B. West, III, Dallas, Tex., for appellant.

Bailey F. Rankin, Asst. U. S. Atty., Dallas, Tex., Melvin M. Diggs, U. S. Atty., for appellee.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Jerry Mack Dorrough and one co-defendant, Gerald Ray Johnson, were convicted in the United States District Court for the Northern District of Texas of robbing a postal employee of a postal vehicle and, while so doing, placing in jeopardy the life of the postal employee by the use of a dangerous weapon in violation of 18 U.S.C. § 2114.[1] Appellant had effectively waived the court's offer to appoint counsel to represent him, pleaded guilty to the charge, and was sentenced to twenty-five years imprisonment, the mandatory penalty provided by statute for the offense charged.

The facts of the crime itself are not in dispute. Appellant and his co-defendant, Johnson, were cellmates in the Dallas County jail pending appeal from state convictions. On May 27, 1963, wielding razor blade knives constructed of four razor blades bound and secured to a spoon, they overpowered a jailer, took him with them as a hostage, and effected their escape. Dorrough had fashioned and put together both weapons, which were substantially identical, and one of them was transmitted to this Court for our examination. Pursued by law en-

1. § 2114. Mail, money or other property of United States

"Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

forcement officers into the street, Dorrough and Johnson with the weapons in their hands approached a United States special delivery station wagon stopped at a traffic signal, whereupon Johnson opened the door opposite the driver, demanded the vehicle, and ordered the driver out.[2] The driver, thinking he "would be killed" if he failed to comply, immediately fled the vehicle by the door on the driver's side. Johnson and Dorrough, still holding the jailer as hostage, drove the vehicle to the Brook Hollow section of Dallas, where they abandoned the postal wagon and stole two private cars in succession, finally wrecking the second and releasing the jailer in Saint Jo, Texas.

Johnson was captured near Saint Jo on May 29, 1963, was returned to Dallas, and verbally admitted that he and Dorrough had taken the mail truck and that he, Johnson, had threatened the carrier with the razor knife. Dorrough remained at large until June 1, 1963, when he was apprehended and ultimately returned to Dallas. When questioned in Saint Jo immediately after his arrest, appellant testified that he told Postal Inspector Thomas that "it was kind of ridiculous" to ask for a written statement, "since 50 people had seen this particular postal car."

On June 14, Dorrough was brought before the district court on a one count information charging him with a 28 U. S.C. § 2114 violation. Dorrough waived indictment and his right to counsel.[3] During the proceedings, appellant was advised that he was charged with robbing a postal employee and putting in jeopardy the life of the postal employee and that the offense carried a mandatory penalty of 25 years. Dorrough told the court that he understood the charges against him and entered a plea of guilty. Dorrough was subsequently convicted and sentenced to twenty-five years imprisonment.

---

2. At the plenary hearing on the 2255 motion Dorrough first testified that he did not recall what was said to the driver of the vehicle when it was taken. However, when confronted with a sworn pleading filed in this case by Dorrough on a prior motion he testified:

"Q (By Mr. Rankin) In that pleading, Mr. Dorrough, it says, 'When the Petitioner and his Co-Defendant and Jailer reached the postal vehicle, the Petitioner's co-defendant opened the right door of the vehicle and told the postal employee to get out or he, Jerry Mack Dorrough, would cut the jailer's throat'—is that what your co-defendant told him?

A Yes, sir, that's correct.

Q And that was at the door of the vehicle when he was wielding this instrument which has been introduced in evidence, is that correct?

A That's correct.

Q Now, Mr. Dorrough, you said you fashioned those knives, did you not?

A Yes, sir."

Further, Dorrough testified that he was with Johnson at the vehicle when it was taken, but that he, Dorrough, was busy holding the jailer hostage with the other knife. Immediately Dorrough and Johnson entered the vehicle, forced the jailer into it and took flight.

3. "THE COURT: Mr. Dorrough, will you stand up, and you may stand up, you and Mr. Johnson, one at a time.
You do not have a lawyer?
THE DEFENDANT DORROUGH: No, ma'am.
THE COURT: You don't have the money for one?
DORROUGH: No, ma'am, I don't have any money for one.
THE COURT: Do you know that if you wish a lawyer, I will appoint one for you, and it won't cost you anything?
DORROUGH: Yes, ma'am.
THE COURT: Do you want me to appoint a lawyer?
DORROUGH: No, ma'am.
THE COURT: You have given it consideration?
DORROUGH: Yes, ma'am, I have given it lots of consideration.
THE COURT: You have been in jail some time?
DORROUGH: Yes, ma'am, I've given it lots of consideration.
THE COURT: And, you are sure you don't want me to appoint a lawyer for you?
DORROUGH: Yes, ma'am, I'm sure.
THE COURT: All right, you may have a seat."

This is the third motion for relief under 28 U.S.C. § 2255 to reach this court. The two previous appeals, reported at 327 F.2d 667 (1964) and 344 F.2d 125 (1965), were affirmed per curiam. The present proceedings began when letters written by Dorrough challenging the validity of his plea and sentence were treated by the district court as an application for relief under 28 U.S.C. § 2255.[4] Leave to proceed in forma pauperis was granted, and counsel was appointed to represent Dorrough. Appellant then filed an amended motion to vacate and set aside his sentence. On July 13, 1966, a hearing was held and the district court found that appellant's plea of guilty was understandingly and voluntarily made and that appellant had placed the postal employee's life in jeopardy.[5] At this plenary hearing the appellant was present with court-appointed counsel and he testified at length. Appellant's motion was denied.

For a reversal of the district court's denial of his motion, Dorrough alleges that the above findings are clearly erroneous. After a thorough and careful review of the record, we conclude that the district court's findings are amply supported by the evidence.

## I.

■ Rule 11 F.R.Crim.P. provides that the court "shall not accept the plea [of guilty] without first determining that the plea is made voluntarily with understanding of the nature of the charge." [6] While it is true that the trial court need not observe any particular ritual to satisfy Rule 11, Hulsey v. United States (5 Cir. 1966) 369 F.2d 284; United States v. Davis (7 Cir.

1954) 212 F.2d 264, it is equally true that routine questions on the subject of understanding are insufficient. Munich v. United States (9 Cir. 1964) 337 F.2d 356; United States v. Lester (2 Cir. 1957) 247 F.2d 496; Smith v. United States (5 Cir. 1956) 238 F.2d 925. Moreover, when a defendant seeks to proceed without counsel and to enter a guilty plea, an even more exacting inquiry should be made and is demanded of the trial court. In the case of United States v. Lester, supra, the defendant, without counsel, changed his not guilty plea to one of guilty on the allegedly mistaken belief that he was pleading guilty to a misdemeanor and not a felony. The court reversed, holding that the district court's perfunctory inquiry on the subject of understanding was insufficient, since "[c]omprehension of the charge demands more than familiarity with the crime alleged." 247 F.2d at 500.

■ What comprehension an accused had of the nature of the charges against him and of the possible defenses available to him can only be determined from what is shown on the record. A single response by the defendant that he "understands" the charge gives no assurance or basis for believing he does. Munich v. United States, supra. However, the transcript of the June 14 proceedings at which time appellant pled guilty discloses that both the prosecuting attorney and the trial court carefully explained to Dorrough the charge against him.

■ The prosecuting attorney, while informing appellant that he was entitled to have the facts against him presented to the Grand Jury, described the offense as "robbery of a postal employee and

---

4. The issues raised by appellant in this proceeding, which are discussed in detail later in the opinion, were not before this court in either prior proceeding.

5. The findings made by the district court are as follows:

   "1. That there was no discussion between the Petitioner and the postal inspector as to whether it was to the best interest of the Petitioner to plead guilty.

2. The victim's life was placed in jeopardy by Dorrough.

3. Petitioner understood the charge against him when he was arraigned in court. Petitioner's plea was voluntarily and understandingly made."

6. Rule 11 was amended after the defendant entered his plea of guilty. However, we have considered the rule to be declaratory of the then existing law.

putting the life of the postal employee in jeopardy." A copy of the proposed information had previously been given Dorrough and he acknowledged that he had read it. However, the prosecutor went on to state its contents, that Dorrough was charged with wilfully and feloniously robbing a substitute city carrier of the Post Office of a United States Post Office vehicle and that in committing the robbery Dorrough put the life of the postal employee in jeopardy by the use of a dangerous weapon, to-wit, a razor blade knife. Dorrough then stated he understood the charge, and expressed a desire to waive indictment. The waiver of indictment forms were produced whereupon it was noted that the original copy described the offense as merely robbery of a postal employee. However, the phrase "and putting in jeopardy the life of the postal employee" had been penned in. It was again carefully explained to Dorrough that the charge against him included both the robbery and putting the postal employee's life in jeopardy.[7]

The trial court, before accepting the guilty plea, took great pains to ascertain that Dorrough was aware that he was pleading guilty to robbery of a postal employee and putting his life in jeopardy, a crime carrying a mandatory twenty-five year penalty.[8]

Thus, the record demonstrates that not only was the offense for which Dorrough was charged explained to him several times with great care on the part of the prosecutor and the trial court, but also the court repeatedly inquired of Dorrough as to his understanding of the charge. We do not find such proceeding to be a "perfunctory inquiry" into Dorrough's understanding of the nature of the charge. Nor is the statutory offense for which Dorrough was charged complicated or difficult to understand. Moreover, Dorrough was well aware of the acts he committed while effecting his escape on May 27, 1963, namely, while he and his partner were wielding lethal weapons they ordered such employee to abandon his vehicle. At the very moment the knives were in full view, the

---

7. In fact, when Dorrough signed the waiver of indictment, he initialled the written in portion.

8. "THE COURT: Will you stand up, Mr. Dorrough, please. You have heard the charged [sic] explained to you, and you have heard the information read to you. Are you sure that you understand that you are charged with the robbery of a postal employee and putting in jeopardy his life?
DORROUGH: Yes, ma'am.
THE COURT: You have also heard from the U. S. Attorney what the maximum penalty is, or what the penalty is, because, you know, it is mandatory. If you plead guilty or are found guilty, the punishment is assessed at twenty-five years in the penitentiary. Do you know that?
DORROUGH: Yes, ma'am.
THE COURT: Now, some offenses require a penalty and likewise prohibit any parole sooner than the maximum penalty. That is not the case in this instance. Even though the mandatory penalty is twenty-five years, that doesn't mean that you wouldn't get out in less time than that, depending on the circumstances.
Do you understand that?

DORROUGH: Yes, ma'am.
THE COURT: Now, understanding what the charge is and understanding what the penalty is, do you wish to plead Guilty or Not Guilty.
DORROUGH: I wish to plead Guilty, ma'am.
THE COURT: You are sure of that?
DORROUGH: Yes, ma'am.
THE COURT: You have likewise given this matter consideration, you have read in the paper that the penalty was a mandatory penalty of twenty-five years?
DORROUGH: Yes, ma'am.
THE COURT: Has anyone talked you into pleading Guilty against your own belief about it?
DORROUGH: No, ma'am.
THE COURT: The District Attorney has not promised you anything?
DORROUGH: No, ma'am.
THE COURT: Nobody has promised you anything to plead Guilty?
DORROUGH: No, ma'am, not anyone.
THE COURT: You make that plea simply because you know yourself to be Guilty?
DORROUGH: Yes, ma'am.
THE COURT: I find you Guilty then, on your plea of Guilty. You may have a seat."

jailer was in custody, Dorrough was obviously in position to cut the jailer's throat, and Johnson was free to act with his knife. There is little wonder that the driver of the postal vehicle took flight, and in our view, his conclusion that he would be killed if he did not obey orders was amply justified.[9] In fact Dorrough does not deny, nor has he ever denied, his participation in these events. He and Johnson were partners in the crime and were acting in concert in the accomplishment of their purposes. Since the charge itself is an exact and concise description of Dorrough's actions on the above date, it would be difficult to say that Dorrough did not understand completely the offense described in the charge.

Furthermore, the allegation that in effecting the robbery the defendant did "then and there put in jeopardy the life" of the postal employee appeared throughout the proceedings and Dorrough was informed of such charge from the very beginning. The fact that the life of the carrier was placed in jeopardy was set forth in the original complaint, in the warrant of arrest, the hearing before the Commissioner related thereto, the final commitment issued by the Commissioner so described the offense, the information filed contained the charge and the waiver of the indictment so described it. As stated earlier, not only did Dorrough sign the waiver of indictment, he initialed that portion of the waiver which contained the interlineation "and putting in jeopardy the life of the postal employee." From the beginning to end all the documents relating to the case fully informed Dorrough that he was charged with putting in jeopardy the life of the postal employee.[10]

9. The following is from the record on the plenary hearing of the 2255 motion:

"Q (By Mr. West) Jerry, what did Mr. Stradford say when he was testifying before the Commissioner with respect to the question of his life being in jeopardy?

A He said the reason he left the car was because he thought his life—he would be killed."

* * * * *

"Q (By Mr. West) What did Mr. Stradford say?

A The Commissioner asked him or asked a question or the U. S. Attorney there asked him why did he leave the car—why did he leave it—he was supposed to be delivering the mail and they asked him why did he leave the car, and he said, 'The reason I left the car was because I thought I would be killed'— that's the reason—that's what he said."

* * * * *

"Johnson verbally admitted that he and Dorrough had robbed Carrier Stradford of the mail truck and that the knife was used to threaten Stradford. Johnson admitted that it was he who actually held the knife on Stradford forcing him from the car."

(This last quotation is from the sentence data presented at the plenary hearing.)

10. At the plenary hearing Dorrough testified as follows:

"Q. (By Mr. Rankin) At this proceeding in which you pled guilty, the only accusation that was made and ever made against you was that you robbed the vehicle and put the man's life in jeopardy, is that not correct?

A. Yes, that's correct."

Upon being asked why he did not raise the question about his understanding of the meaning of putting the postal employee's life in jeopardy, Dorrough responded:

"Q. Why didn't you bring it up then?

A. Because I had already had it in my mind to plead guilty.

Q. Well, the Judge asked you about all that—why didn't you tell the Judge about it?

A. Well, I already had it in my mind to plead guilty and I just didn't mention it."

Also at the hearing the postal inspector testified as follows:

"A. In reading over my reports I see that I said merely that he was interviewed and that he at that time—at the time of the interview—orally admitted having placed the life of the postal employee in jeopardy in effecting the robbery of the mail truck.

Q. This would have been a report after the St. Jo interview, would it not?

A. It would have been a report after all interviews. You see, I submitted no reports of my investigation until after the Commissioner's hearing, and then I submitted my first report, taking into consideration everything that had happened up to that time."

The record further discloses that Dorrough was not a stranger to the courtroom. This was not the first time he had been charged with a crime which endangered the life of another. He was being held in the Dallas County jail under a conviction for armed robbery and had received a sentence of 25 years. Earlier he had been convicted on another charge of armed robbery. In the episode under consideration he and his partner had threatened the jailer's life. They had also threatened the life of the chief jailer in effecting their escape with the jailer who remained their hostage. The testimony in the record demonstrates that Dorrough is intelligent and alert.[11]

■■■ Strongly relying on Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); United States v. Commonwealth of Pennsylvania (3 Cir. 1965) 343 F.2d 447; United States v. Lester (2 Cir. 1957) 247 F.2d 496, 500; Munich v. United States (9 Cir. 1964) 337 F.2d 356, other similar cases, and Rule 11 F.R.Crim.P., the appellant strenuously contends that he was not adequately informed of the nature of the charges against him and that his plea was not voluntarily made with understanding of the nature of the charge and the consequences of the plea. He also contends that the offense with which he was charged contained a lesser included offense which provided for only a ten year mandatory penalty and that it was incumbent upon the trial court to fully advise him of this fact. We reject all of the contentions of the appellant and conclude that the requirements of the decisions and Rule 11 F.R.Crim.P. were fully complied with. When the charge against the defendant completely, adequately and accurately describes the conduct of the defendant and when the evidence and circumstances clearly demonstrate that the defendant was fully aware and consciously participated in such conduct, we believe it is unnecessary to require the court to go into detailed and fine spun explanations and definitions of other crimes with which the defendant might have been charged. In this case the offense as described in the information exactly coincides with the conscious conduct of the appellant. The facts, the circumstances, the testimony of other witnesses and indeed, the testimony of the appellant himself all clearly demonstrate that his plea was made voluntarily with understanding of the nature of the charge and the consequences of the plea. See United States v. Rizzo, 362 F.2d 97, 99 (7 Cir. 1966); United States v. Lowe, 367 F.2d 44 (7 Cir. 1966). The cases relied upon by the appellant are clearly distinguishable on a factual basis and are inapposite.[12] We conclude that the guilty plea was entered simply because Dorrough knew that he was guilty. (See footnote 8, supra). From our review of the record of the district court proceedings whereat Dorrough pled guilty as charged and the record of the plenary hearing on his motion, we cannot conclude that the court's finding is clearly erroneous.

## II.

■ Appellant next contends that he was denied due process of law because

11. The following is from the transcript of record at the time of sentencing:

"THE COURT: Mr. Dorrough, will you stand up, please? Would you like to say anything?

THE DEFENDANT DORROUGH: Yes, ma'am, I realize it is a mandatory sentence and I realize very much the seriousness of this crime and the seriousness of the other crimes. However, I do not think it is necessary for me to spend approximately twenty-five or thirty flat years in prison, and I would like to have some way to have these sentences run concurrently, if possible. I would appreciate it very much."

This reference was to the state sentences which had been imposed on Dorrough for other crimes.

12. It has also been decided that "the ten year crime" and "the twenty-five year crime" proscribed by the statute are different offenses, Wells v. United States, 311 F.2d 409 (10 Cir. 1962); Hood v. United States, 152 F.2d 431 (8 Cir. 1946); Schultz v. Zerbst, 73 F.2d 668 (10 Cir. 1934) and Bent v. United States, 340 F.2d 703 (8 Cir. 1955).

there was no factual basis for his plea of guilty.[13] He argues that he and his confederate were not armed with weapons which would inflict wounds from any distance and that, never having the postal employee completely within their power, it was impossible for them to have put the employee in legal jeopardy as that term was defined in Smith v. United States (5 Cir. 1960) 284 F.2d 789, 791. The district court, however, found specifically that the "victim's life was placed in jeopardy by Dorrough." We hold that there was ample evidence to support the district court finding. The fact that a man flees does not prove he was not in jeopardy. The razor blade knives wielded by Dorrough and his confederate were designed for more than admiration of their skillful construction. By effective use, they were certainly capable, as the district court must have concluded, to have jeopardized a man's life if the man had not moved quickly enough, or tripped, or had his path impeded.

### III.

■ Appellant's final contention is that his guilty plea was not voluntarily made. His claim is that it was induced by postal inspector Thomas's allegations that state charges would not be filed if Dorrough pleaded guilty to the federal offense, that he would be making a mistake if he did not do so, that the state authorities were reluctant to release him, and that he might get two life sentences if he were prosecuted in state court. Thomas's testimony at the district court hearing rebutted Dorrough's allegations, and the district court found as a fact that "there was no discussion between the Petitioner and the postal inspector as to whether it was to the best interest of the Petitioner to plead guilty." Neither this finding nor the finding that the plea was voluntarily made can be termed clearly erroneous, and we dismiss

this contention as being wholly without merit.

Judgment affirmed.

GOLDBERG, Circuit Judge (dissenting):

I must respectfully dissent from the majority's disposition of the case, as I cannot agree with the conclusion reached in part I of the opinion.

The defendant makes two claims here. First, he contends that when he pled guilty he misunderstood the phrase "put * * * life in jeopardy" in § 2114 to mean that the victim must be in fear of his life, and that the trial judge should have explained that jeopardy meant not fear but actual danger. The defendant claims that he did not put the postal employee in actual danger of his life, that he pled guilty only because he knew that the postal employee had feared for his life, and that he thought the postal employee's subjective fear constituted the jeopardy. The defendant claims that he would have pled not guilty had the true meaning of jeopardy been explained to him. The majority refers to this claim only in general terms, and rejects it.

The defendant's second claim, which I view as being inextricably bound up with the first, is that § 2114 describes a greater offense with a mandatory 25-year penalty (assault with intent to rob and concurrent jeopardizing of life) and a lesser included offense with a maximum ten-year sentence (assault with intent to rob). The defendant says that when he pled guilty, the lesser offense had not been mentioned or explained to him; he contends that it should have been if he was to be given the full understanding of the nature of the charge and consequences of the plea. With this issue, the majority deals specifically.

I understand the Court's holding on this point to be summarized in the following sentence, "When the charge against the defendant completely, ade-

13. This allegation is bottomed on Rule 11, Fed.R.Crim.P. which was amended in 1966 by addition of a new sentence requiring that "[t]he court shall not enter a judgment * * * unless it is satisfied that there is a factual basis for the plea."

quately and accurately describes the conduct of the defendant and when the evidence and circumstances clearly demonstrate that the defendant was fully aware and consciously participated in such conduct, we believe it is unnecessary to require the court to go into detailed and fine spun explanations and definitions of other crimes with which the defendant might have been charged." In other words, the Court holds that if the elements which constitute the crime charged are clear from the indictment and from the explanation of the trial judge and the defendant admits, or "facts and circumstances" show, that he has engaged in that conduct, then the guilty plea is valid even if the trial judge does not explain that there are lesser offenses for which a jury might convict the defendant on the same indictment. The rationale of this holding appears to be, therefore, that the defendant's admission of conduct constituting the greater offense, or independent "evidence and circumstances" tending to show that he committed the greater offense, make it unnecessary to consider the question of lesser offenses. This holding at least misconceives the purpose of Rule 11 and misconstrues that Rule into permitting a summary, non-jury factfinding of guilt to support a finding of the validity of a guilty plea.

## I.

A withdrawn guilty plea is not evidence and has no value as testimony. Kercheval v. United States, 1926, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 64. Therefore, in questioning whether a guilty plea should be withdrawn, to accept the plea

itself as having any probative value is to assume the conclusion.

Further, a habeas corpus hearing to determine the validity of a guilty plea does not exist for the purpose of determining whether or not the crime was committed. The question of guilt is reserved for either a valid plea of guilty or a trial by jury. When the validity of a plea of guilty is in question, a judge's finding that the defendant was in fact guilty is not relevant and cannot be used to buttress the conclusion that the plea was valid. The relevant question is whether the plea was made "voluntarily with the understanding of the nature of the charge and the consequences of the plea." Guilt is simply not in issue at such a hearing. The obvious purpose of Rule 11 is to make sure that the defendant understands the law. When he pleads, he may apply such law as has been explained to him to the facts as he knows them and reach the legal conclusion to plead guilty or not guilty. In this procedure the defendant finds his own facts. The only other valid method of factfinding in a criminal case is trial by jury as guaranteed by the Sixth Amendment. To allow the factfinding of a court to support a questioned plea of guilty is to take the duty of finding of facts away from either the defendant or a jury. Even if this is permissible under the Constitution, it is not the purpose of Rule 11.[1]

The position that the guilty plea in issue here was valid may not be supported, therefore, either by the contention that in pleading guilty the defend-

---

1. The last sentence of Rule 11 reads "The Court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." Nothing in this sentence contradicts what is said here. That sentence exists to satisfy the trial court that "the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." Advisory Committee's Note to the 1966 Amendment of Rule 11. The trial court is not permitted by this sentence to demonstrate that the defendant

understood the charge by finding as fact that the defendant was guilty. The sentence relates only to the determination that the facts that the defendant is willing to admit must constitute the elements of one of the crimes which the indictment covers. The sentence is merely another method of ascertaining whether the defendant understands the crime he is charged with. See 8 Moore, Federal Practice, 1966 Cumulative Supplement ¶ 11.03[1], pp. 29–31 esp. at footnote 12 (Cipes 1966). Cf. Stinson v. United States, 5 Cir. 1963, 316 F.2d 554.

ant admitted committing the crime or by the contention that the testimony of witnesses (including the defendant) at the hearing, the defendant's past record, or other circumstances, showed that the defendant was guilty. There is no relevance in the majority's statement: "In this case the offense as described in the information exactly coincides with the conscious conduct of the appellant." Inquiries into what "the conscious conduct" of the defendant was are neither necessary nor proper to a determination of whether the defendant made the guilty plea "voluntarily with the understanding of the nature of the charge and the consequences of the plea," except in the very limited, and not here relevant, sense of the last sentence of Rule 11. The majority's holding, however, rests on the assumption that both the defendant's plea of guilty and other factors independent of the defendant's understanding can be used to show that the defendant understood the charge and the consequences of his plea. As I believe these factors irrelevant, I conclude that the majority's holding is untenable.

## II.

The only issue present here is whether the trial judge explained enough of § 2114 to the defendant to insure that the defendant's guilty plea was made with sufficient understanding of the charge against him and of the consequences of his plea to satisfy Rule 11. The issue goes to comprehension of the law, and not to the conduct of the defendant when the crime was committed. The majority recognizes that routine questions from the trial judge are not sufficient to satisfy the Rule, and that the trial judge's inquiry must be more comprehensive and exacting when, as here, the defendant is without counsel. It is also quite obvious that the more complicated the statute with which the defendant is charged, and the more the terms of the statute or indictment depart from their common, non-legal usages, the more explanation of the charge must be offered by the trial judge. As the majority states, citing United States v. Lester, 2 Cir. 1957,

247 F.2d 500, the defendant's familiarity with what he has done is not sufficient; the defendant must also be informed of how legally to interpret what he has done and of what will happen to him if he pleads guilty.

The statute under which the defendant was charged here is akin to a double-edged sword. Unlike those statutes which enumerate a specific crime with a range of punishments therefor, § 2114 sets out a range of crimes, each with separate penalties. It provides for the greater crime of robbing a postal employee and wounding him or putting his life in jeopardy, with a mandatory 25-year penalty. The defendant was charged and convicted of this offense. However, § 2114 also provides for a lesser included offense, assault with intent to rob a postal employee, or actual robbery of him, without the escalating elements of wounding or jeopardy; for this offense the maximum imprisonment is ten years. When the indictment or information charges the greater offense, but the government's proof establishes only the lesser, a properly-instructed jury may convict for the lesser offense.

Nothing appears in the record here to indicate that the trial judge either affirmatively advised the defendant, or conducted an inquiry which yielded the information that the defendant knew, that under this statute he might be guilty of robbing the vehicle while merely assaulting rather than endangering the life of the postal employee. Because Dorrough could have been convicted of this lesser offense upon the same information which charged him of the greater, I believe that Dorrough was not advised of the charge against him within the meaning of Rule 11.

This is, apparently, a case of first impression. However, the leading case on the general subject, Von Moltke v. Gillies, 1948, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321, states:

"To be valid such waiver must be made with an apprehension of the nature of the charges, the *statutory offenses included within them*, the range

of allowable punishments thereunder, *possible defenses to the charges* and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." (Emphasis added.)

The waiver spoken of there is waiver of counsel before pleading guilty. A fortiori, no less stringent standards must be met before a defendant without counsel can plead guilty.[2] United States v. Commonwealth of Pennsylvania, 3 Cir. 1965, 343 F.2d 447, 451.

The language of *Von Moltke* demands that the defendant be given all facts "essential to a broad understanding of the whole matter." Rule 11 by its terms requires that the defendant be given information not required to be given even when the police warn a suspect under the rule of Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, because a valid guilty plea is more consequential than an admission usable against the defendant.

"A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." Kercheval v. United States, supra, 274 U.S. at 223, 47 S.Ct. at 583, 71 L.Ed. at 1012.

The holding of the majority in the present case, stripped of what I think are its irrelevancies, says that where a crime is described by an indictment, and the defendant admits the crime, then lesser included crimes need not be described. The argument in favor of such a holding runs thus: if the greater crime is charged and described clearly, and the defendant is willing to admit to it, then of what purpose is it that lesser included crimes were not also described? But the trouble with this argument is that it recognizes far too little of the

purpose of Rule 11, and that it is inconsistent with that purpose and with cases (some cited by the majority) which carry out that purpose. For instance, in Munich v. United States, 9 Cir. 1964, 337 F.2d 356, the Ninth Circuit held invalid a guilty plea made by a defendant who was unaware that he would not be eligible for parole. Rule 11 at the time did not include the phrase "and the consequences of the plea", which were added in 1966, so the Ninth Circuit was holding, in 1964, that failure to inform a defendant that he would not be eligible for parole was failure to insure that the plea was made "with understanding of the charge." See also Harper v. United States, 10 Cir. 1966, 368 F.2d 53; Pilkington v. United States, 4 Cir. 1963, 315 F.2d 204. Yet the majority's narrow rationale for the present case would seem to exclude the holding in *Munich*: if a crime is described clearly in an indictment, and the defendant is willing to admit to it, of what relevance is it that the defendant wrongly thinks that he will be eligible for parole? He has been explained the crime and has admitted it.

The answer is clear: Rule 11 requires more than the statement of the elements of a crime because a defendant's decision to plead guilty or not guilty depends on a good deal more than whether he thinks he is guilty or not guilty. He must be apprised of more than a mere description of the charge because he must weigh the risks of trial against the length of punishment and the kind of punishment. Crucial to such an evaluation is knowledge of the complete range of crimes charged by the indictment or information, so that the defendant may be aware of the range of possibilities in a jury verdict when he considers whether he wishes to stand trial. He may decide that he has a chance that the jury will disregard or disbelieve a weak portion of the government's case, but only if the jury knows that there is a lesser crime

2. *Von Moltke* is the first case cited by the Advisory Committee on the Federal Rules of Criminal Procedure after explaining that the addition of the phrase "and the

consequences of [his] plea" to Rule 11 merely states "what clearly * * * [was] the law."

of which it might still convict him. A defendant cannot weigh his chance with a jury if he does not know that there is a lesser ground for conviction upon which it might resolve its doubts. Knowledge of the existence of such a lesser crime might just convince a defendant to risk his case with a jury where he otherwise would not.

It would be uncandid also to fail to mention that upon learning of a lesser included offense, the defendant might announce to the prosecution that he would consent to plead guilty only to the lesser offense, in the hope that the prosecution would allow him so to plead rather than go through the risk and bother of a trial. Plea-bargaining, at present, must be recognized as part of our system. Cortez v. United States, 9 Cir. 1964, 337 F.2d 699, cert. denied, 1965, 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726. Task Force on the Administration of Justice on the President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 9–13 (1967).

In a certain class of cases, of which the present case is an example, the knowledge by the defendant that a lesser included offense exists would seem especially to impel the defendant to decide to stand trial. In the present case, the sentence for the greater offense is mandatory; the defendant can expect no diminution in punishment from the trial court for pleading guilty and has nothing to lose by standing trial. In one case he is assured of 25 years; in the other, a maximum of ten.

Finally, § 2114 is more complicated than the usual statute in which several crimes are homogenized. The difference between the greater and lesser included offenses depends upon the interpretation of the phrase "put * * * life in jeopardy". Courts have struggled with the meaning of this phrase for almost 150 years.[3] Although the law has become well-settled that to put a life in jeopardy

means to place it in actual, not merely feared, danger, courts, lawyers, and parties still have trouble with the phrase. In United States v. Donovan, 2 Cir. 1957, 242 F.2d 61, the trial judge had erroneously instructed the jury that the greater offense had been committed if the postal employee had " 'been put in fear of being killed or in danger of being killed. It is not a question of whether the defendants planned to kill him or intended to kill him.' * * * 'It is a question of whether he was put in fear or danger of being killed' ". 242 F.2d at 63.[4] See Meyers v. United States, 5 Cir. 1941, 116 F.2d 601, in which we held that an indictment charging only that the postal employee was put in fear of his life was insufficient to support a conviction for putting life in jeopardy. See also Wagner v. United States, 9 Cir. 1959, 264 F. 2d 524, cert. denied 1959, 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548, and the early case of United States v. Reeves, C.C.W.D.Tex.1889, 38 F. 404, which contains a jury instruction. Compare Smith v. United States, 5 Cir. 1960, 284 F.2d 789.

Lawyers and judges are word merchants and merchandisers. Our understanding of "jeopardy" is removed from the understanding and usage of the word by a layman. Some of the lexicon of crime is far ranging and known to the many, but "jeopardy" is not in the argot of our daily lives. While I do not believe that the assertion by the defendant of his noncomprehension by itself is sufficient to invalidate the judge's explanation, I am convinced from the nature of the statute charging the offense, from the colloquy between the trial court and the defendant, and from the other relevant facts that I cannot expect this defendant to have grasped and understood the lesser offenses included within the offense charged. In this setting I believe that the district judge's finding on habeas that Dorrough understood the charges against him and pleaded guilty

---

3. The earliest recorded case is United States v. Wood, 1818, 28 Fed.Cas. p. 755, No. 16,757.

4. The *Donovan* case has a history of the caselaw interpreting this statute.

with such understanding was clearly erroneous under Rule 52(b), F.R.Civ.P.

Rule 11 is not a giveaway. The Constitution grants the unconditional right of jury trial in criminal cases. In pleading guilty a defendant trades away that right. It is not a handsome picture if the government plays what may seem to the defendant to be a shell game with the relevant facts so that the defendant is disadvantaged or uninformed when he chooses whether to plead guilty or to stand trial. Rule 11 looks to this broader question rather than to the narrow one of the majority. Kercheval v. United States, supra; Von Moltke v. Gillies, supra; United States v. Lester, supra. I would grant the defendant a new trial.